# Exhibit A

*Fidelity*

Recording Requested By:
D. CALMES

COUNTRYWIDE HOME LOANS, INC.

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

Sacramento County Recording
Mark Norris, Clerk/Recorder
BOOK **20030501** PAGE **2412**
Thursday, MAY 01, 2003  2:38:45 PM
Ttl Pd    $33.00      Nbr-0001856977

KOL/24/1-9

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
JEANIE SMART-SMITH

--- [Space Above This Line For Recording Data] ---

| CA0437137466703 | 830891 | 0002597944504003 |
|---|---|---|
| [Case #] | [Escrow/Closing #] | [Doc ID #] |

**State of California**

# DEED OF TRUST

FHA Case No.

CA0437137466703

MIN 1000157-0002435263-1

THIS DEED OF TRUST ("Security Instrument") is made on   APRIL 25, 2003       . The Trustor is
JOHN JOE CASTORINA, AS HIS SOLE AND SEPARATE PROPERTY

whose address is
2110 FOREST LAKE DRIVE, RANCHO CORDOVA, CA 95670
("Borrower"). The trustee is
CTC REAL ESTATE SERVICES, A CALIFORNIA CORPORATION
400 COUNTRYWIDE WAY, MSN SV-88, SIMI VALLEY, CA 93065 ,
("Trustee"). The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for
Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws
of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
COUNTRYWIDE HOME LOANS, INC.
("Lender") is organized and existing under the laws of NEW YORK               , and has an address of
4500 Park Granada, Calabasas, CA 91302-1613                           .
Borrower owes Lender the principal sum of
ONE HUNDRED FIVE THOUSAND THREE HUNDRED SEVEN and 00/100
Dollars (U.S. $ 105,307.00       ). This debt is evidenced by Borrower's note dated the same date as this
Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and
payable on  MAY 01, 2033        . This Security Instrument secures to Lender: (a) the repayment of the debt
evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all

**FHA California Deed of Trust with MERS - 4/96**

Page 1 of 8

Initials: *[signature]*

VMP-4N(CA) (0207)   CHL (08/02)(d)     VMP MORTGAGE FORMS - (800)521-7291                    Amended 2/98





CASE #: CA0437137466703                          DOC ID #: 0002597944504003

other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following described property located in   SACRAMENTO                                 County, California:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 0560122003                              which has the address of
                    2110 FOREST LAKE DRIVE, RANCHO CORDOVA
                                        [Street, City]
California    95670     ("Property Address");
            [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Initials: _____

4N(CA) (0207)   CHL (08/02)                    Page 2 of 8

CASE #: CA0437137466703                          DOC ID #: 0002597944504003

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially

4N(CA) (0207)   CHL (08/02)                      Page 3 of 8                              Initials: [signature]

CASE #: CA0437137466703                          DOC ID #: 0002597944504003

false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

-4N(CA) (0207)   CHL (08/02)                  Page 4 of 8                    Initials

CASE #: CA0437137466703                               DOC ID #: 000259794504003

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

   **10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

   **11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

   **12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

   **13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

   **14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

   **15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

   **16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Initials:

4N(CA) (0207)   CHL (08/02)                     Page 5 of 8

CASE #: CA0437137466703                    DOC ID #: 000259794504003

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Assignment of Rents. Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

CASE #: CA0437137466703                          DOC ID #: 0002597944504003

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs.

**20. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**21. Request for Notices.** Borrower requests that copies of the notices of default and sale be sent to Borrower's address which is the Property Address.

**22. Beneficiary Statement.** Lender may collect a fee, not to exceed the maximum amount permitted by law for furnishing Beneficiary statement as provided by Section 2943 of the Civil Code of California.

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)].

☐ Condominium Rider             ☐ Growing Equity Rider          ☐ Other [specify]
☐ Planned Unit Development Rider  ☐ Graduated Payment Rider

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
JOHN JOE CASTORINA                          -Borrower

_____ (Seal)
                                            -Borrower

_____ (Seal)
                                            -Borrower

_____ (Seal)
                                            -Borrower

-4N(CA) (0207)    CHL (08/02)                Page 7 of 8

CASE #: CA0437137466703            DOC ID #: 0002597944504003

**State of California**

County of _Sacramento_        } ss.

On _April 25, 2003_    before me, _Rebecca Ann Poort_ , personally appeared

_John Joe Castorina_

~~personally~~

~~known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

     (This area for official notarial seal)                _Rebecca Ann Poort_      (Seal)

REBECCA ANN POORT
Commission # 1380910
Notary Public - California
Sacramento County
My Comm. Expires Oct 20, 2006

-4N(CA) (0207)    **CHL (08/02)**            Page 8 of 8

Prepared by: JEANIE SMART-SMITH

**COUNTRYWIDE HOME LOANS, INC.**

Branch #: 598
150 NATOMA STATION DRIVE #100
FOLSOM, CA 95630
Phone: (916) 355-1245
Br Fax No.: (916) 355-0133

DATE:           04/25/2003
CASE #:         CA0437137466703
DOC ID #:       0002597944504003
BORROWER:  JOHN JOE CASTORINA
PROPERTY ADDRESS:  2110 FOREST LAKE DRIVE
                   RANCHO CORDOVA, CA 95670

## LEGAL DESCRIPTION EXHIBIT A

LOT 7, AS SHOWNON THE "PLAT OF LARCHMONT-CORDOVA UNIT NO. 2", RECORDED
SEPTEMBER 19, 1961, IN BOOK 67 OF MAPS, MAP NO. 7, RECORDS OF SAID COUNTY.
EXCEPTING FROM THE SUB-SURFACE OF SAID LOT ANY LEVEL OR LEVELS ONE HUNDRED
FEET OR MORE BELOW THE SURFACE THEREOF, ALL OIL, GAS AND OTHER
HYDROCARBONS AND MINERALS NOW OR AT ANY TIME HEREAFTER SITUATE THEREIN.
TOGETHER WITH AN EASEMENT AND RIGHT OF INGRESS AND EGRESS UNDER AND
THROUGH THE SUB-SURFACE OF SAID LOT, AT A DEPTH BELOW ONE HUNDRED FEET,
FOR THE PURPOSES OF EXPLORING, MINING, DRILLING PRODUCING, EXTRACTING AND
REMOVING THE SAID SUBSTANCES, OR EITHER OR ANY OF THEM FROM THE
SAIDSUB-SURFACE BELOW A DEPTH OF ONE HUNDRED FEET UNDERLYING THE SAID LOT
AND FROM SUB-SURFACE OF OTHER LANDS, IN THE VICINITY OF SAID LAND, AS
CONVEYED BY LARCHMONT CORDOVA, A LIMITED PARTNERSHIP TO NORTH AMERICAN
TITLE GUARANTY CORPORATION, SACRAMENTO DIVISION, IN DEED RECORDED MAY
1,1962, IN BOOK 4436 PAGE 532, OFFICIAL RECORDS, SAID COUNTY, WHICH ALSO
SPECIFICALLY STATES: "NOTHING HOWEVER, CONTAINED IN THIS GRANT SHALL IN
ANY WAY BE CONSTRUED TO INCLUDE THE RIGHT TO IN ANY WAY DISTURB THE
SURFACE OF SAID LAND ABOVE THE DEPTH OF ONE HUNDRED FEET  ASSESSORS PARCEL
NO:  056-0122-003

FHA/VA/CONV
● Legal Description Exhibit A
1C404-XX (11/01)(d)



*23991*

*0259794450000001004N*

# Exhibit B

**Bank of America**
**Home Loans**
P.O. BOX 961291
FORT WORTH, TX 76161

Notice Date: APRIL 19, 2021



0000409  04 SP 1.600  **SNGLP T4 1 3208 95670-240910  -C17-P00409-I      -CCS  G415
John Joe Castorina
2110 FORESTLAKE DR
RNCHO CORDOVA, CA 95670-2409

Loan No.                    9445
Property Address: 2110 FOREST LAKE DRIVE
                  RANCHO CORDOVA CA  95670

# We sent notices requesting hazard insurance coverage information for this property. We didn't receive the information, so we were required to buy coverage and charge the cost.

## What you need to know

We bought what is commonly known as Lender-Placed Insurance. For information about the Lender-Placed Hazard Insurance coverage we bought — including the coverage amount, the coverage period and the premium for the coverage — see the enclosed Evidence of Hazard Insurance.

Please note that Lender-Placed Hazard Insurance:

- **May be significantly more expensive than insurance you can buy yourself**
- **May not provide as much coverage as an insurance policy you buy yourself**

We charged the Lender-Placed Hazard Insurance coverage to the account as an additional debt secured by the mortgage or deed of trust. If we charged this cost to the escrow account or created an escrow account, the monthly payments will likely increase. If the account is a home equity line of credit, the cost of the coverage was either charged as a draw against the line of credit or as a separate fee to the account.

If you have received a discharge of your personal obligation to repay the debt associated with the loan, the cost of Lender-Placed Insurance will **only** increase the value of the lien held against the property.

## What you can do

- If you provide us with proof of hazard insurance coverage in an amount at least equal to the amount of coverage on the Evidence of Hazard Insurance, we'll cancel the Lender-Placed Hazard Insurance coverage and only charge for the period not covered by the hazard insurance policy(ies) you provide.

G415

 
- The information provided must be either a copy of your insurance policy, your insurance policy declaration page or a certificate of insurance.

You or your insurance agent may provide the information, including your loan number and property address, by doing one of the following:

- Upload it online, at **Ihaveinsurance.com/BankofAmerica**.
- Fax it to (800) 293-8158.
- Mail it to the return address at the top of this letter.

## We're here to help

Please see the enclosed Important Information Regarding Your Home Loan Hazard Insurance for general information about our hazard insurance requirements.

We appreciate the opportunity to serve your financial needs. If you have questions, please call us at (866) 265-3321, Monday through Friday, 8 a.m. to 9 p.m. Eastern.

## Bankruptcy notice

IF YOU ARE CURRENTLY IN A BANKRUPTCY PROCEEDING OR HAVE PREVIOUSLY RECEIVED A DISCHARGE OF THIS DEBT UNDER BANKRUPTCY OR OTHER APPLICABLE LAW, THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY AND IS NOT AN ATTEMPT TO COLLECT A DEBT, A DEMAND FOR PAYMENT, A REQUEST ON AN OBLIGATION OR AN ATTEMPT TO IMPOSE PERSONAL LIABILITY UPON YOU FOR A DISCHARGED DEBT.

**Bankruptcy notice**

IF YOU ARE CURRENTLY IN A BANKRUPTCY PROCEEDING OR HAVE PREVIOUSLY RECEIVED A DISCHARGE OF THIS DEBT UNDER BANKRUPTCY OR OTHER APPLICABLE LAW, THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY AND IS NOT AN ATTEMPT TO COLLECT A DEBT, A DEMAND FOR PAYMENT, A REQUEST ON AN OBLIGATION OR AN ATTEMPT TO IMPOSE PERSONAL LIABILITY UPON YOU FOR A DISCHARGED DEBT.



# Important Information Regarding Your Home Loan Hazard Insurance

## Hazard insurance and continuous coverage

You're required to maintain acceptable hazard insurance coverage on your property at all times to protect against loss on the property that serves as collateral for the loan. As proof of coverage, you'll need to provide us with a copy of your insurance policy, insurance policy declaration page or certificate of insurance. If you don't provide evidence of acceptable coverage, we may buy Lender-Placed Insurance for the property. If you are in an active bankruptcy or you have received a discharge of your personal obligation to repay the debt associated with the loan, the cost of Lender-Placed Insurance will *only* increase the value of the lien held against the property.

Lender-Placed Insurance may be significantly more expensive and may not provide as much coverage as hazard insurance you can buy yourself, and we strongly encourage you not to rely on Lender-Placed Insurance.

The hazard insurance requirements applicable to the loan are contained in the Hazard Insurance Requirements section below. The hazard insurance you buy must, at a minimum, meet these requirements. The hazard insurance must also cover the property at all times.

If the hazard insurance you buy does not cover the property continuously, there will be a gap period for coverage. If you're unable to obtain coverage for a gap period, we may buy Lender-Placed Insurance for the gap period and assess the cost to the lien on the property. Please see the Lender-Placed Insurance section below for more important information.

## Hazard insurance requirements

At a minimum, your hazard insurance policy must:

- Include fire and extended coverage policy
- Not limit or exclude from coverage (in whole or in part) damage or loss from fire, windstorm, hurricane, hail or any other perils that are a part of the extended coverage endorsement
- Provide for claims to be settled on a replacement cost basis, where available, and be in an amount at least equal to 100% of the insurable value of the improvements as established by the hazard insurer
- Include rent loss coverage for non-owner-occupied properties
- Use the same named insured on the policy as the named mortgagor/trustor/grantor on your security instrument, or current owner if there has been a loan assumption
- Include a Lender's Loss Payable Endorsement or standard mortgagee/loss payee clause in favor of Bank of America, N.A. and its successors and/or assigns ATIMA as mortgagee

The insurance policy must be issued by an insurance company acceptable to us. The insurance company must be:

- Licensed, or otherwise authorized by law, to conduct business in the jurisdictions where the property is located
- Written by an insurance company with a sufficient carrier rating from A.M. Best Company, Inc., Demotech, Inc., and Standard & Poor's

If there are changes in federal or state laws or regulations or for other reasons, we may modify our insurance requirements, including, without limitation, requiring additional types or amounts of coverage. If we make a change, we'll notify you so that you may purchase the required coverage.

## Estimated coverage amount and term of coverage of Lender-Placed Insurance

We require you to maintain your hazard insurance coverage on a replacement cost basis. We'll obtain Lender-Placed Insurance by using your last known hazard insurance coverage amount, unless noted otherwise. This establishes a replacement cost value provided by the hazard insurer as the proxy for that amount.

- As of the date of this letter, the estimated Lender-Placed Insurance coverage amount for your property is $253,760.00.
- The coverage period will be effective from 04/17/2021 until 04/17/2022.

G415

3208-17-00-0000409-0002-0007393

This coverage represents the amount of your last known hazard insurance coverage amount contained in our records. If that information was not available, it represents the unpaid loan balance of the loan(s) secured by the property as the coverage amount, or the combined value of total liens we service, or the current credit limit of the line of credit.

If you believe this estimated coverage amount does not reflect the replacement cost of the property, your last known hazard insurance coverage amount or the unpaid loan balance of the loan(s), please call us. You can also provide us with a written estimate of the replacement cost of the property from an insurance company of your choice that meets our criteria for insurance companies listed in the Hazard Insurance Requirements section.

## Lender-Placed Insurance

If you don't maintain continuous acceptable hazard coverage on your property at all times, applicable law, investor requirements, and/or your loan agreement allows or requires us to buy hazard insurance to protect the property against loss. Unless you received a bankruptcy discharge, this insurance will be at your cost. This is known as Lender-Placed Insurance. Please note that Lender-Placed Insurance:

- May be significantly more expensive than the hazard insurance you can buy yourself
- May not provide as much coverage as the hazard insurance you can buy yourself; for example, it will only cover the structure(s) on the property and will not include coverage for loss or damage to personal property (such as the contents of your home), workers' compensation, injury to persons or property for which you may be personally liable, additional living expenses, medical payments, or for the risks of earthquake
- May not be sufficient to protect your full equity interest in the improvements to the property if a loss occurs and may not be sufficient to fully restore or repair such improvements to its previous condition
- Will not provide guaranteed or extended replacement cost coverage
- May have other restrictions, exclusions and limitations specifically described in the coverage that we buy
- If there's a claim, all losses will be paid to us or the investor except amounts in excess of our or the investor's interest, which will be credited to you
- Is provided by an unaffiliated entity; we advance the LPI premium and pass the cost directly to you with no additional charges or fees

We'll cancel Lender-Placed Insurance for any period for which you provide acceptable evidence of hazard insurance. You'll only be charged the cost for the period not covered by the policy(ies) you obtain. You'll receive a full refund of the cost of LPI, if your evidence of coverage shows continuous coverage for your property.

## How Lender-Placed Insurance is charged

The cost of Lender-Placed Hazard Insurance will be charged to the escrow account associated with the above referenced loan, if there is one. If there is no escrow account and the loan agreement allows us to establish one, we will establish an escrow account and charge the cost of the insurance to the account. If the loan is a home equity line of credit or similar loan product with a credit line, we'll either advance funds from the credit line to pay the cost of the LPI or charge you separately for the insurance. The loan agreement may also provide that the cost of LPI becomes an additional debt secured by the mortgage or deed of trust.

If you have received a discharge of your personal obligation to repay the debt associated with the loan, the cost of Lender-Placed Insurance will **only** increase the value of the lien held against the property.

## Setting up an escrow account for hazard insurance

If you don't currently have an escrow account and your loan is eligible, you can establish an escrow account for payment of your hazard insurance. To check eligibility and establish an escrow account, please call us at (866) 265-3321, Monday through Friday, 8 a.m. to 9 p.m. local time.

## Maximum deductible requirements

The chart below explains our maximum deductible allowances for your preferred hazard insurance policy. In general, these amounts are the maximum amounts allowed by the owner, investor insurer, or guarantor of your loan.

**Maximum Allowed Deductible:**

| Type of property/loan | Maximum deductible |
| --- | --- |
| Single-family residence | 5% of the face amount of the policy.[1] |
| Condominium | Condo Master or Blanket Policy: 5% of the face amount of the policy. Individual Condo Unit Policy: 5% of the face amount of the policy. |
| Cooperative | Co-Op Project Policy: 5% of the face amount of the policy with no greater than 5% of the replacement cost for the individual unit. |
| Planned Unit Development (PUD) | PUD Blanket Policy: 5% of the replacement cost of the unit. PUD Unit Policy: 5% of the face amount of the policy. |

**Note:** [1]The face amount of the policy would be the same as the "coverage amount" mentioned elsewhere in this document. Lender-Placed Insurance deductible amounts may differ.

## Condominiums and other property types with master hazard insurance policies

If you live in a condominium complex insured under a master policy issued to your condominium association, please send us a copy of the association's master policy to demonstrate proof of adequate hazard insurance coverage, using one of the methods described in the cover letter.

Certain additional insurance provisions may be required for Fannie Mae, Freddie Mac, Veterans Affairs, Federal Housing Administration/ Housing and Urban Development or other similar entities.

## Housing counselor information

If you'd like counseling or assistance, contact the U.S. Department of Housing and Urban Development (HUD). For a list of homeownership counselors or counseling organizations in your area, go to hud.gov/offices/hsg/sfh/hcc/hcs.cfm or call 800.569.4287.

## Questions?

Please call us at (866) 265-3321, Monday through Friday, 8 a.m. to 9 p.m. Eastern.

# CHANGE IN CONDITIONS NOTICE

Last year your lender requested an insurance policy be issued for your property when the required hazard insurance policy was not received. The enclosed policy is a replacement for the expiring policy. **The insurance carrier, coverage amount, deductible, cost and policy provisions may differ from the prior policy.** Please be assured that there will be no lapse in coverage and your lender's interest in the property will continue to be protected.

Your new policy for the current term is enclosed. It explains the policy provisions, the amount of coverage provided, the deductible, and the cost.



3208-17-00-0000409-0004-0007391

5001 N. Riverside Dr.
Suite 105
Fort Worth, TX 76137

Date: 04/19/2021
Control Number: Q-6066599

000000 - 000009
John Joe Castorina
2110 FORESTLAKE DR
RNCHO CORDOVA, CA  95670

Re:  Loan Number:                9445
                           Lender: 9946 Branch: 0000
     Property Address:     2110 FOREST LAKE DRIVE
                           RANCHO CORDOVA CA  95670

Dear John Castorina:

Your policy does not provide coverage against the peril of earthquake.  California law requires that earthquake coverage be offered to you at your option.

WARNING:  These coverages may differ substantially from and provide less protection than the coverage provided by the insurance policy on your home.  There are exclusions and limitations such as outbuildings, swimming pools, masonry fences, and masonry chimneys.  This disclosure form contains only a general description of coverages and is not a part of your insurance policy.  Only the specific provisions of your policy will determine whether a particular loss is covered and, if so, the amount payable.

The coverage, subject to policy provisions, may be purchased at additional cost on the following terms:

A.  Amount of Dwelling Coverage: $253,760.00.

B.  Applicable Deductible: 15.0% of Actual Cash Value
    If your loss is below this amount, you may not receive any payment from your coverage.  Your insurance company or agent will provide written notice as to how the deductible applies to the market value of your coverage, the insured value of your coverage or the replacement value of your coverage.

C.  Contents Coverage: $5,000

D.  Additional Living Expenses:  $1,500

E.  Annual Premium: $10,150.40

You must ask the company to add Earthquake Coverage within 30 days from the date of mailing of this notice or it shall be conclusively presumed that you have not accepted this offer.  Before coverage can be made effective, a certified check for the full annual premium must be received by the company.  This coverage shall be effective on the day your acceptance of this offer and a certified check for the full annual premium is received by us.

If you have any questions, please contact us at the address above.

** PLEASE NOTE, YOU MUST RETURN THIS ENTIRE LETTER **



Re:  John Castorina
Bank of America Loan # :  ▮▮▮▮9445

## TO ACTIVATE EARTHQUAKE COVERAGE

YOU ARE NOT OBLIGATED TO PURCHASE THIS COVERAGE AND WE WILL TAKE NO FURTHER ACTION UNLESS WE HEAR FROM YOU.

Please indicate your choice, sign and return this form with a certified check for the full annual premium to: National General, 5001 N. Riverside Dr., Suite 105, Fort Worth, TX 76137, Attention Property Hazard Department – Underwriting.

_____   Yes, I want earthquake insurance.  A certified check for the full annual premium shown above is enclosed.   REQUESTS RECEIVED WITHOUT A CERTIFIED CHECK FOR THE FULL ANNUAL PREMIUM WILL NOT BE ACCEPTED.

_____   No, I do not want earthquake coverage.  I understand that the above referenced policy will not cover any damage to my home caused by or contributed to by earthquake.  I also understand that damage from earthquake is not covered even if there are additional contributing causes covered by my policy.

_____          _____
Insured's Signature                                                      Date

INTEGON NATIONAL INSURANCE COMPANY
5630 University Parkway
Winston-Salem, NC 27105

## NOTICE OF INSURANCE

**LOAN NUMBER:** ▮▮▮9445
Lender: 9946 Branch: 0000

**BORROWER**
JOHN JOE CASTORINA
2110 FORESTLAKE DR
RNCHO CORDOVA, CA 95670

**NAMED INSURED MORTGAGEE**
Bank of America, N.A.
Its Successors and/or Assigns ATIMA
P.O. BOX 961291
Fort Worth, TX 76161-0291

|  |  | Amount of Insurance | Premium |
|---|---|---|---|
| **POLICY NUMBER** Q-6066599 | Dwelling | $253,760.00 | $989.66 |
| **POLICY TERM:** |  |  |  |
| FROM 04/17/2021 TO 04/17/2022 | Deductible - per loss occurrence |  |  |
| ☐ NOON ☒ 12:01 AM | Property is VACANT at time of loss | $1,000.00 |  |
|  | Vandalism & Malicious Mischief | $1,000.00 |  |
|  | All Other Covered Losses | $1,000.00 |  |
| **DESCRIBED LOCATION** (if different from mailing address) 2110 FOREST LAKE DRIVE RANCHO CORDOVA CA 95670 |  | TOTAL CHARGES | $989.66 |

## NOTICE TO BORROWER

**THIS INSURANCE WILL NOT PROVIDE COVERAGE FOR AN AMOUNT GREATER THAN THE AMOUNT OF INSURANCE SHOWN ABOVE. THIS POLICY MAY NOT FULLY PROTECT YOUR INTEREST IN THE PROPERTY LISTED. THIS POLICY DOES NOT PROVIDE PERSONAL PROPERTY COVERAGE OR LIABILITY COVERAGE, UNLESS INDICATED ABOVE.**

**DEDUCTIBLES:** Please refer to the deductibles shown above for the coverage provided by this Policy.

Subject to the terms and provisions of this Policy, it is agreed that the insurance applies to the property described above and to any person shown as a Borrower with respect to such property. The following additional provisions apply:

(a) The above Named Insured Mortgagee is authorized to act for the Borrower in all matters pertaining to this insurance except receipt of Notice of Cancellation. Notice of Cancellation will be sent to the Named Insured Mortgagee and the Borrower.

(b) The above Named Insured Mortgagee is authorized to advance all funds to be recovered from the Borrower for the insurance afforded.

(c) Loss, if any, shall be adjusted with and payable to the above Named Insured Mortgagee and the Borrower as their interest may appear, either by a single instrument so worded or by separate instruments payable respectively to the Named Insured Mortgagee and the Borrower, at the company's option.

**For Customer Service questions, please call our toll free Customer Service Number at: (866) 265-3321**

**To report a claim, please contact our Claim Department at: 1-800-323-7466**

31A11-00CE0004-R0717                                                                                     Page 1 of 1

3208-17-00-0000409-0006-0007389



Dwelling Hazard Coverage Form

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

In this policy, "you" and "your" refer to the "Named Insured Mortgagee" and the "Additional Named Insured" shown in the Declarations. "We", "us" and "our" refer to the Company providing this insurance.

## COVERAGES

This insurance applies to the Described Location, Coverages for which an Amount of Insurance is shown and Perils Insured Against for which a Premium is stated.

**COVERAGE A - Dwelling**

We cover:

1. the dwelling on the Described Location shown in the Declarations, used principally for dwelling purposes not to exceed four (4) living units, including, but not limited to, individually owned townhouses or permanently situated mobile homes;

2. structures attached to the dwelling;

3. materials and supplies located on or next to the Described Location used to construct, alter or repair the dwelling or other structures on the Described Location; and

4. if not otherwise covered in this policy, building equipment, and outdoor equipment used for the service of and located on the Described Location.

This coverage does not apply to land, including land on which the dwelling is located.

**COVERAGE B - Other Structures**

We cover other structures on the Described Location, set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

This coverage does not apply to land, including land on which the other structures are located.

1. used in whole or in part for commercial, manufacturing or farming purposes; or

2. rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

## OTHER COVERAGES

1. **Other Structures.** You may use up to 10% of the Coverage A amount of insurance for loss by a Peril Insured Against to other structures described in Coverage B.

   Use of this coverage does not reduce the Coverage A amount of insurance for the same loss.

2. **Debris Removal.** We will pay your reasonable expense for the removal of:

   a. debris of covered property if a Peril Insured Against causes the loss; or

   b. ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

   Debris removal expense is included in the amount of insurance applying to Coverage A.

3. **Reasonable Repairs.** In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable Peril Insured Against.



This coverage does not increase the amount of insurance that applies to the covered property. Reasonable Repairs is included in the amount of insurance applying to Coverage A.

**4.  Collapse.** We insure for risk of direct damage physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

(1)  hidden decay;

(2)  hidden insect or vermin damage;

(3)  weight of contents, equipment, animals or people;

(4)  weight of rain which collects on a roof;

(5)  use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items (1), (2), (3), (4) or (5) unless the loss is a direct result of the collapse of a building.

Collapse does not include settling, cracking or shrinking.

This coverage does not increase the amount of insurance applying to the damaged covered property.

---

## PERILS INSURED AGAINST

## COVERAGE A - DWELLING

## COVERAGE B - OTHER STRUCTURES

We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property; however, we do not insure loss:

1.  involving collapse, other than as provided in Other Coverages 4.;

2.  caused by:

a.  freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is being constructed;

b.  freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

(1)  fence, pavement, patio or swimming pool;

(2)  foundation, retaining wall or bulkhead; or

(3)  pier, wharf or dock;

c.  theft of property not part of a covered building or structure;

d.  theft in or to a dwelling or structure under construction;

e.  wind, hail, ice, snow or sleet to outdoor radio or television antennas and aerials including lead-in wiring, masts or towers;

f.  constant or repeated seepage or leakage of water or steam over a period of weeks, months or years from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance;

g.  (1)  wear and tear, marring, deterioration;

(2)  inherent vice, latent defect, mechanical breakdown;

(3)  smog, rust or other corrosion, mold, wet or dry rot;

(4)  smoke from agricultural smudging or industrial operations;

(5)  discharge, dispersal, seepage, migration, release or escape of pollutants;

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

(6)  settling, shrinking, bulging or expansion, including resultant cracking, or pavements, patios, foundations, walls, floors, roofs or ceilings; or

(7)  birds, vermin, rodents, insects or domestic animals.

If any of these cause water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

3.  excluded under General Exclusions.

Under items 1 and 2, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

## GENERAL EXCLUSIONS

1.  We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

    **a.  Ordinance or Law,** meaning enforcement of any ordinance or law regulating the use, construction, repair, or demolition of a building or other structure, unless specifically provided under this policy.

    **b.  Earth Movement,** meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking; rising or shifting; unless direct loss by:
    (1)  fire;
    (2)  explosion; or
    (3)  breakage of glass or safety glazing material which is part of a building, storm door or storm window;

    ensues and then we will pay only for the ensuing loss.

    **c.  Water Damage,** meaning:
    (1)  flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;
    (2)  water which backs up through sewers or drains or which overflows from a sump; or
    (3)  water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

    Direct loss by fire or explosion resulting from water damage is covered.

    **d.  Power Failure,** meaning the failure of power or other utility service if the failure takes place off the Described Location. But, if a Peril Insured Against ensues on the Described Location, we will pay only for that ensuing loss.

    **e.  Neglect,** meaning your neglect to use all reasonable means to save and preserve property at and after the time of a loss.

    **f.  War,** including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

    **g.  Nuclear Hazard,** to the extent set forth in the Nuclear Hazard Clause of the Conditions.

    **h.  Intentional Loss,** meaning any loss arising out of any act committed:
    (1)  by or at the direction of you or any person or organization named as an additional insured; and
    (2)  with the intent to cause a loss.

2.  We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

    **a.  Weather conditions.** However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss;

    **b.  Acts or decisions,** including the failure to act or decide, of any person, group, organization or governmental body;

    **c.  Faulty, inadequate or defective:**
    (1)  planning, zoning, development, surveying, siting;
    (2)  design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
    (3)  materials used in repair, construction, renovation or remodeling; or
    (4)  maintenance; of part or all of any property whether on or off the Described Location.

3.  We do not insure trees, shrubs or other plants for losses of any kind.

## CONDITIONS

1.  **Policy Period.** This policy applies only to loss which occurs during the policy period.

2.  **Insurable Interest and Amount of insurance.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:



a.  for an amount greater than the interest of a person insured under this policy; or

b.  for more than the applicable amount of insurance.

If the Described Property is vacant and the mortgage on the property has been declared in default by the mortgagee at the time of a loss, we shall be liable for no more than the Mortgagee's interest in the property at the time of loss.

The mortgagee's interest is represented by the mortgagor's unpaid balance, less unearned interest and finance charges, less unearned insurance premiums, less collection and foreclosure expenses, and less late charges and penalties added to the mortgagor's unpaid balance after the inception date of this policy.

3.  **Concealment or Fraud.** The entire policy will be void if, whether before or after a loss, you have:

    a.  intentionally concealed or misrepresented any material fact or circumstance;

    b.  engaged in fraudulent conduct; or

    c.  made false statements;

    relating to this insurance.

4.  **Your Duties After Loss.** In case of a loss to your covered property, you must see that the following are done:
    a.  give prompt notice to us or our agent;

    b.  (1)  protect the property from further damage;

        (2)  make reasonable and necessary repairs to protect the property; and

        (3)  keep an accurate record of repair expenses;

    c.  as often as we reasonably require:

        (1)  show the damaged property;

        (2)  provide us with records and documents we request and permit us to make copies; and

        (3)  submit to examination under oath, while not in the presence of any other named insured, and sign the same;

    d.  send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

        (1)  the time and cause of loss;

        (2)  your interest and that of all others in the property involved and all liens on the property;

        (3)  other insurance which may cover the loss;

        (4)  changes in title or occupancy of the property during the term of the policy;

        (5)  specifications of damaged buildings and detailed repair estimates;

5.  **Loss Settlement.** Covered property losses are settled as follows:

    a.  (1)  Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings; and

        (2)  Structures that are not buildings;

        at Actual Cash Value at the time of loss but not more than the amount required to repair or replace.

    b.  Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

        (1)  We will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

            (a)  the amount of insurance under this policy that applies to the building;

            (b)  the replacement cost of that part of the building damaged for like construction and use on the same premises; or

            (c)  the necessary amount actually spent to repair or replace the damaged building.

        (2)  We will pay no more than the Actual Cash Value of the damage unless:

            (a)  actual repair or replacement is complete; or

            (b)  the cost to repair or replace the damage is both:

                (i)  less than 5% of the amount of insurance in this policy on the building; and

                (ii)  less than $2,500.

        (3)  You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an Actual Cash Value basis. You may then make claim within 180 days after loss for any additional liability on a replacement cost basis.

6.  **Glass Replacement.** Loss for damage to glass caused by a Peril Insured Against will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

7. **Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the Described Location is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

a. Pay its own appraiser; and

b. bear the other expenses of the appraisal and umpire equally.

8. **Other Insurance.** This policy prohibits other insurance. In the event that the Additional Named Insured (mortgagor) has voluntary insurance with an effective date on or before the effective date of any coverage issued under this policy, this policy will be cancelled on its effective date and all premiums will be refunded. In the event that the Additional Named Insured (mortgagor) obtains insurance during the term of any coverage issued under this policy, this policy will be cancelled as of the effective date of such coverage and the premium will be refunded on a pro rata basis.

9. **Subrogation.** You may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If any assignment is sought, the person insured must sign and deliver all related papers and cooperate with us.

10. **Suit Against Us**. No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.

11. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.

12. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

a. reach an agreement with you;

b. there is an entry of a final judgment; or

c. there is a filing of an appraisal award with us.

No coverage will be available to any mortgagee other than that shown as the Named Insured Mortgagee on the Declarations page of this policy.

13. **Abandonment of Property**. We need not accept any property abandoned by you.

14. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

15. **Cancellation.**

a. The intent of this policy is to provide coverage for the Named Insured Mortgagee if the Additional Named Insured (mortgagor) fails to provide insurance which meets the requirements of the Named Insured Mortgagee. If the Named Insured Mortgagee no longer has an interest in the mortgaged property, this policy may be cancelled as of the effective date that the Named Insured Mortgagee no longer has an interest or at the election of the Named Insured Mortgagee this policy may remain in force until the expiration date shown on the individual certificate or policy of insurance. If the Additional Named Insured (mortgagor) provides evidence of insurance or if it is determined that the property insured by this policy is insured by "other insurance", this policy will be cancelled as of the effective date of the other insurance and all unearned premium will be refunded. If Additional Named Insured (mortgagor) provides evidence of insurance that meets the requirements of the Named Insured Mortgagee, this policy will be cancelled as of the effective date of the policy provided by the Additional Named Insured (mortgagor) and all unearned premium will be refunded on a pro rata basis.

b. This policy may be cancelled by the Named Insured Mortgagee by returning the policy to us or notifying us in writing the date cancellation is to become effective.

c. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the declarations.



Proof of mailing will be sufficient proof of notice.

  (1) We may cancel this policy by mailing notice of cancellation to the Additional Named Insured at the address shown on the Additional Named Insured Endorsement or by delivering the notice not less than 30 days prior to the effective date of the cancellation.

  (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

  (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

    (a) if there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy, or

    (b) if the risk has changed substantially since the policy was issued.

  This can be done by letting you know at least 30 days before the date cancellation takes effect.

  (4) When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

d. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

e. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**16. Non-Renewal.** We may elect to not renew this policy. If the Named Insured Mortgagee no longer has an interest in the policy as of the expiration of the policy term, this policy will not be renewed. If the policy is not renewed, a non-renewal notice will be provided to the Additional Named Insured (mortgagor) by written notice within the number of days required by the insurance statutes of the state where the property is located. Notice will be sent to the last known address of the Additional Named Insured (mortgagor). Proof of mailing will be sufficient proof of notice.

**17. Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented through introduction of a subsequent edition of our policy.

**18. Waiver or Change of Policy Provisions.** A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

**19. Assignment.** Assignment of this policy will not be valid unless we give our written consent.

**20. Death.** If you die, we insure:

a. your legal representatives but only with respect to the property of the deceased covered under the policy at the time of death;

b. with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

**21. Nuclear Hazard Clause.**

a. "Nuclear Hazard" means any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

b. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

c. This policy does not apply to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

**22. Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted on the amount you received for the recovered property.

**23. Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

**National General**
Lender Services

# SIGNATURE PAGE

In witness whereof, we, as officers of the stock Company designated on the Declarations Page, have caused this policy to be executed and attested. If required by state law, this policy shall not be valid unless countersigned by our authorized representative.

Jeffrey Weissmann

Secretary

Barry S. Karfunkel

President

00000-00SP0001-E0412                    Page 1 of 1

3208-17-00-0000409-0010-0007385



3208-17-00-0000409-0010-0007385

# INFLATION PROTECTION ENDORSEMENT

**This endorsement attaches to and becomes a part of the Dwelling Hazard Coverage Form.**

We will provide the insurance described in this Endorsement in return for the premium and compliance with all provisions of this Endorsement.

Under **"OTHER COVERAGES", INFLATION PROTECTION,** is added:

The Amount of Insurance for coverage shown on the Notice of Insurance by reason of inflation requires an increase in coverage protection which this Endorsement automatically modifies the Policy on the anniversary date as follows:

1. The Amount of Insurance is adjusted based on the same percentage, if any, as indicated by the residential building cost percent factors published by Marshall & Swift/Boeckh (BCI) or equivalent service; or as indicated in a national building cost index.

2. There is no annual adjustment in the amount of insurance for years in which there is no increase in national residential average building cost trend; and

3. The premium for this coverage at the next Policy renewal date will be based on the Amount of Insurance determined on that date by the provisions of this coverage.

The Amount of Insurance will not be reduced during the current Policy period below the amount for which premium was paid.

Under **"CONDITIONS",** the following is added:

The Described Location is a 1-4 unit Dwelling or Condominium, including all improvements specific to residential use in which you have an insurable interest and applies to property insured to replacement cost only. Mobile homes and manufactured homes are excluded for purposes of this endorsement.

All other terms and conditions of the policy remain unchanged.



3208-17-00-0000409-0011-0007384

**NOTICE TO CONSUMERS – CALIFORNIA RESIDENTIAL INSURANCE DISCLOSURE**

This disclosure is required by Section 10102 of the California Insurance Code. This form provides general information related to residential property insurance and is not part of your residential property insurance policy. Only the specific provisions of your policy will determine whether a particular loss is covered and the amount payable. The information provided does not preempt existing California law.

### PRIMARY FORMS OF RESIDENTIAL DWELLING COVERAGE

> **You have purchased the coverage(s) checked below. NOTE: Actual Cash Value Coverage is the most limited level of coverage listed. Guaranteed Replacement Cost is the broadest level of coverage.**

_____ **ACTUAL CASH VALUE COVERAGE** for either a total or partial loss to the structure or its contents pays the amount it would cost you to repair, rebuild, or replace the thing lost or injured, less a fair and reasonable deduction for physical depreciation based upon its condition at the time of the injury or the policy limit, whichever is less. A deduction for physical depreciation applies only to components of a structure that are normally subject to repair and replacement during the useful life of that structure.

__X__ **REPLACEMENT COST COVERAGE** is intended to provide for the cost to repair or replace the damaged or destroyed dwelling, without a deduction for physical depreciation. Many policies pay only the dwelling's actual cash value until the insured has actually begun or completed repairs or reconstruction on the dwelling. Coverage only pays for replacement costs up to the limits specified in your policy.

_____ **EXTENDED REPLACEMENT COST COVERAGE** is intended to provide for the cost to repair or replace the damaged or destroyed dwelling without a deduction for physical depreciation. Many policies pay only the dwelling's actual cash value until the insured has actually begun or completed repairs or reconstruction on the dwelling. Extended Replacement Cost provides additional coverage above the dwelling limits up to a stated percentage or specific dollar amount. See your policy for the additional coverage that applies.

_____ **GUARANTEED REPLACEMENT COST COVERAGE** covers the full cost to repair or replace the damaged or destroyed dwelling for a covered peril regardless of the dwelling limits shown on the policy declarations page.

_____ **BUILDING CODE UPGRADE COVERAGE,** also called Ordinance and Law coverage, covers additional costs to repair or replace a dwelling to comply with the building codes and zoning laws in effect at the time of loss or rebuilding. These costs may otherwise be excluded by your policy. Meeting current building code requirements can add significant costs to rebuilding your home. Refer to your policy or endorsement for the specific coverage provided and coverage limits that apply.

**READ YOUR POLICY AND POLICY DECLARATIONS PAGE CAREFULLY:** The policy declarations page shows the specific coverage limits you have purchased for your dwelling, personal property, separate structures such as detached garages, and additional living expenses. The actual policy and endorsements provide details on extensions of coverage, limitations of coverage, and coverage conditions and exclusions. The amount of any claim payment made to you will be reduced by any applicable deductibles shown on your policy declarations page. It is important to take the time to consider whether the limits and limitations of your policy meet your needs. Contact your agent, broker, or insurance company if you have questions about what is covered or if you want to discuss your coverage options.

**INFORMATION YOU SHOULD KNOW ABOUT RESIDENTIAL DWELLING INSURANCE**

**AVOID BEING UNDERINSURED:** Insuring your home for less than its replacement cost may result in your having to pay thousands of dollars out of your own pocket to rebuild your home if it is completely destroyed. Contact your agent, broker, or insurance company immediately if you believe your policy limits may be inadequate.

**THE RESIDENTIAL DWELLING COVERAGE LIMIT:** The coverage limit on the dwelling structure should be high enough so you can rebuild your home if it is completely destroyed. Please note:

3208-17-00-0000409-0012-0007383



- The cost to rebuild your home is almost always different from the market value.
- Dwelling coverage limits do not cover the value of your land.
- The estimate to rebuild your home should be based on construction costs in your area and should be adjusted to account for the features of your home. These features include, but are not limited to, the square footage, type of foundation, number of stories, and the quality of the materials used for items such as flooring, countertops, windows, cabinetry, lighting and plumbing.
- The cost to rebuild your home should be adjusted each year to account for inflation.
- Coverage limits for contents, separate structures, additional living expenses and debris removal are usually based on a percentage of the limit for the dwelling. If your dwelling limit is too low, these coverage limits may also be too low.

You are encouraged to obtain a current estimate of the cost to rebuild your home from your insurance agent, broker, or insurance company or an independent appraisal from a local contractor, architect, or real estate appraiser. If you do obtain an estimate of replacement value and wish to change your policy limits, contact your insurance company. While not a guarantee, a current estimate can help protect you against being underinsured.

**DEMAND SURGE:** After a widespread disaster, the cost of construction can increase dramatically as a result of the unusually high demand for contractors, building supplies and construction labor. This effect is known as demand surge. Demand surge can increase the cost of rebuilding your home. Consider increasing your coverage limits or purchasing Extended Replacement Cost coverage to prepare for this possibility.

**CHANGES TO PROPERTY:** Changes to your property may increase its replacement cost. These changes may include the building of additions, customizing your kitchen or bathrooms, or otherwise remodeling your home. Failure to advise your insurance company of any significant changes to your property may result in your home being underinsured.

**EXCLUSIONS:** Not all causes of damage are covered by common homeowners or residential fire policies. You need to read your policy to see what causes of loss or perils are not covered. Coverage for landslide is typically excluded. Some excluded perils such as earthquake or flood can be purchased as an endorsement to your policy or as a separate policy. Contact your agent, broker, or insurance company if you have a concern about any of the exclusions in your policy.

**CONTENTS (PERSONAL PROPERTY) COVERAGE DISCLOSURE:** This disclosure form does not explain the types of contents coverage provided by your policy for items such as your furniture or clothing. Contents may be covered on either an actual cash value or replacement cost basis depending on the contract. Almost all policies include specific dollar limitations on certain property that is particularly valuable such as jewelry, art, or silverware. Contact your agent, broker or insurance company if you have any questions about your contents coverage. You should create a list of all personal property in and around your home. Pictures and video recordings also help you document your property. The list, photos, and video should be stored away from your home.

**CONSUMER ASSISTANCE:** If you have any concerns or questions, contact your agent, broker, or insurance company. You are also encouraged to contact the California Department of Insurance consumer information line at (800) 927-HELP (4357) or at www.insurance.ca.gov for free insurance assistance.

THIS PAGE INTENTIONALLY LEFT BLANK

3208-17-00-0000409-0013-0007382

## California Residential Property Insurance Bill of Rights

A consumer is entitled to receive information regarding homeowner's insurance.  The following is a limited overview of information that your insurance company can provide:

- The insurance company's customer service telephone number for underwriting, rating, and claims inquiries.
- A written explanation for any cancellation or nonrenewal of your policy.
- A copy of  the insurance policy.
- An explanation of how your policy limits were established.
- In the event of a claim, an itemized, written scope of loss report prepared by the insurer or its adjuster within a reasonable time period.
- In the event of a claim, a copy of the Unfair Practices Act and, if requested, a copy of the Fair Claims Settlement Practices Regulations.
- In the event of a claim, notification of a consumer's rights with respect to the appraisal process for resolving claims disputes.
- An offer of coverage and premium quote for earthquake coverage, if eligible.

A consumer is also entitled to select a licensed contractor or vendor to repair, replace, or rebuild damaged property covered by the insurance policy.

The information provided herein is not all inclusive and does not negate or preempt existing California law.  If you have any concerns or questions, contact your insurance agent, broker, insurance company or the California Department of Insurance consumer information line at (800) 927-HELP (4357) or at *www.insurance.ca.gov* for free insurance assistance.

# IMPORTANT NOTICE

California law requires us to provide you with information for filing complaints with the State Insurance Department regarding the coverage and service provided under this policy.

The Department of Insurance should be contacted only after discussions with the insurer, or its agent or representative, or both, have failed to produce satisfactory resolution to the problem (see attached notice for toll free customer service telephone number).

Please forward such complaints to:

California Department of Insurance
Consumer Affairs Division
300 South Spring Street
Los Angeles, CA  90013

Or

Toll Free Customer Service: (866) 265-3321
100 N TRYON ST
CHARLOTTE, NC  28255

3208-17-00-0000409-0014-0007381



3208-17-00-0000409-0014-0007381

**National General Holdings Corp.**
**Privacy Policy - California Residents**
**Updated August 25, 2020**

*National General Holdings Corp. ("NGHC," "we," "us," and "our") is giving you (you," "your") this notice pursuant to the requirements of federal and state laws and regulations under which we are governed. This policy will inform you of your privacy rights and how we may collect, use, and share nonpublic Personal Information about you and any accounts you may have or had with a company (or companies) in the National General Holdings Corp.*

NGHC includes insurance companies, insurance technology providers, and other businesses in the insurance industry. Those companies are listed at the end of this notice. Please note that the type of business and business activities determines which regulations apply to your nonpublic Personal Information.

The California Consumer Privacy Act of 2018 ("CCPA") expands the privacy rights of California residents; however, CCPA does not apply to certain businesses as well as public and nonpublic Personal Information governed by certain other state and federal regulations. This impacts NGHC companies and your Personal Information in the following ways:

- All insurance companies are regulated by the federal Fair Credit Reporting Act ("FCRA") and Gramm-Leach-Bliley Act ("GLBA"). The California Financial Information Privacy Act ("Cal-FIPA") also applies to insurance companies. Nonpublic Personal Information governed by these laws is exempt from CCPA.
- Your driver's license information covered by the federal Driver's Privacy Protection Act of 1994 is exempt from CCPA.
- Public information obtained legally from government records is not covered by CCPA.
- Your Protected Health Information ("PHI") as defined under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and your Medical Information ("MI") as defined by California's Confidentiality of Medical Information Act ("CMIA") are exempt from CCPA as well.
- Covered Entities as defined by HIPAA are not subject to CCPA when they manage patient information like PHI. This includes our health insurance underwriting companies.

Although the information and types of businesses noted above are not covered by CCPA, your rights under these laws and regulations have not changed.

**HIPAA Notice of Privacy Practices:** You have rights regarding our privacy practices pertaining to health and medical information under HIPAA; for more information about these rights, please visit our HIPAA Privacy Notice at https://nghcprivacy.com/ngah-PrivacyNotice for more information.

**General Notice of Privacy Practices:** You have rights regarding our privacy practices pertaining to your insurance information under GLBA, Cal-FIPA, and other state and federal regulations including those mentioned above. This includes your right to know the types of personal information we collect, reasons we can share your information under the law, and in some cases to opt out of our sharing your information.

**Notice Overview**

Please review this notice carefully. The remaining content is organized in the following sections:

- **Personal Information**: Our sources, collection, use, disclosure, and protection;
- **Your Rights**: Under CCPA and other regulations, including your rights to opt out of our sharing your information in certain situations, and how to exercise your rights;
- **Additional Information**: Our privacy policy distribution and updates, and the list of NGHC subsidiaries;
- **Exhibit A - Cal-FIPA Important Privacy Choices for Consumers:** Additional privacy choices as a California resident.

*PERSONAL INFORMATION*

**Sources of Personal Information We Collect about You**

We collect information about you to quote and service your insurance policy. This is called "Nonpublic Personal Information" or "NPI" if it identifies you, or members of your household, and is not available to the public. Depending on the service or product, we collect it from some or all of the following sources. We have provided a few examples for each source, but not all may apply to you.

1. Information we collect from you, such as information on applications or other forms, which may include your name, address, email address, age, social security number, driving history, property history, claims history, and health information.
2. Information about your transactions with us, our affiliates, or others, such as your account balance and payment history.



3. Information we receive from outside sources such as consumer reporting agencies, insurance agencies, and state motor vehicle departments. This type of source may provide information on your credit history, credit score, driving and accident history, or prior insurance coverage that you have obtained, including claim history, information related to claims for benefits or coverage under a policy we issue, whether or not you are our customer. In relation to our health insurance business, including long-term care and disability insurance, we may receive information from physicians, hospitals, medical professionals, other health care providers, and other sources related to health care and health history. Please note that the information obtained from outside sources may be retained by those outside sources and disclosed to other persons without our knowledge.

4. Information we receive from outside sources for data integration services and in support of our digital marketplace. This may include anonymization services to protect your personal information, lead sources and aggregators, social media, advertising, other third party sites, web browsers, and search engines.

5. Information about your computer hardware and software that we, or our service provider, may collect if you contact our websites directly or through another website or link. This information can include: your IP address, browser type, device information, domain names, access times, geographic location, your online activities and referring website addresses. When you visit our websites, we use cookies, web beacons, and other technology to collect information about you and your activities on our websites to provide services to you, enhance your online experience, and advertise our products and services. This information is also used for the operation of the website, to maintain quality of the website, and to provide general statistics regarding use of our websites.

## Personal Information We Collect and May Disclose to Non-Affiliated Third Parties

We collect information that identifies, relates to, describes, references, is capable of being associated with, or could reasonably be linked - either directly or indirectly - with a particular consumer or household. The following categories of Personal Information are defined under CCPA as are most of the following examples. For transparency, we are also providing information we may collect under additional regulations. In particular, we have collected the categories of Personal Information noted in the table below about consumers within the last twelve (12) months. The table also includes the categories of non-affiliated third parties with whom we have shared the category of Personal Information, when permitted or required by law.

**Please note that our collection and sharing of this information depends on the products or services we provide and your interactions with us. For example, certain Biometric Information is commonly collected for health insurance but not for property (such as home or auto) insurance.**

| Category of Personal Information | Examples | Shared with Categories of Third Parties |
|---|---|---|
| 1. Identifiers | Legal name, alias, postal address, unique personal identifier, online identifier, Internet Protocol address, email address, account name, Social Security number, driver's license number, passport number, or other similar identifiers. | • Service providers<br>• Consumer reporting agencies<br>• Data and online analytics providers<br>• Online partners and providers*<br>• Insurance related entities**<br>• Third-party product providers<br>• Government entities |
| 2. Information Listed in the California Customer Records Statute (Cal. Civ. Code § 1798.80(e)) | Name, signature, Social Security number, physical characteristics or description, address, telephone number, passport number, driver's license or state identification card number, insurance policy number, education, employment, employment history, bank account number, credit card number, debit card number, or any other financial information, medical information, or health insurance information.<br>*Some Personal Information included in this category may overlap with other categories.* | • Service providers<br>• Consumer reporting agencies<br>• Data and online analytics providers<br>• Online partners and providers*<br>• Insurance related entities**<br>• Third-party product providers<br>• Government entities |

| 3. | Protected Classification Characteristics under California or Federal Law | Age, race, color, ancestry, national origin, citizenship, marital status, medical condition, physical or mental disability, sex (including gender, gender identity, gender expression, pregnancy or childbirth and related medical conditions), sexual orientation, veteran or military status, genetic information (including familial genetic information). | • Service providers<br>• Data and online analytics providers<br>• Online partners and providers*<br>• Insurance related entities**<br>• Third-party product providers<br>• Government entities |
|---|---|---|---|
| 4. | Commercial Information | Records of real or personal property owned or leased, products or services purchased, obtained, or considered, or other purchasing or consuming histories or tendencies. | • Service providers<br>• Consumer reporting agencies<br>• Data and online analytics providers<br>• Online partners and providers*<br>• Insurance related entities**<br>• Third-party product providers<br>• Government entities |
| 5. | Biometric Information | Genetic, physiological, behavioral, and biological characteristics, or activity patterns used to extract a template or other identifier or identifying information, such as, fingerprints, faceprints, and voiceprints, iris or retina scans, keystroke, gait, or other physical patterns, and sleep, health, or exercise data. | • Service providers<br>• Data and online analytics providers<br>• Online partners and providers*<br>• Insurance related entities**<br>• Third-party product providers<br>• Government entities |
| 6. | Internet or Other Similar Network Activity | Browsing history, search history, website interactions, application, or advertisement, links you use or web pages you visit while using our website or applications, browser type, internet service provider (ISP), cookies, and mobile devices, including device type, identifier or other device information. | • Service providers<br>• Data and online analytics providers<br>• Online partners and providers*<br>• Insurance related entities**<br>• Third-party product providers<br>• Government entities |
| 7. | Geolocation Data | Physical location (including address) or movements. | • Service providers<br>• Data and online analytics providers<br>• Online partners and providers*<br>• Insurance related entities**<br>• Third-party product providers<br>• Government entities |
| 8. | Sensory Data | Audio, such as call center recordings, electronic, visual, thermal, olfactory, or similar information. | • Service providers<br>• Insurance related entities**<br>• Third-party product providers<br>• Government entities |
| 9. | Professional or Employment Related Information | Current or past job history. | • Service providers<br>• Data and online analytics providers<br>• Insurance related entities**<br>• Third-party product providers<br>• Government entities |
| 10. | Nonpublic Education Information | Education records directly related to a student maintained by an educational institution or party acting on its behalf.<br><br>*(Pursuant to the Family Educational Rights and Privacy Act (20 U.S.C. Section 1232g, 34 C.F.R. Part 99))* | • Service providers<br>• Data and online analytics providers<br>• Insurance related entities**<br>• Third-party product providers<br>• Government entities |

| 11. Inferences Drawn from Other Personal Information | Profile reflecting a person's preferences, characteristics, psychological trends, predispositions, behavior, attitudes, intelligence, abilities, and aptitudes. | • Service providers<br>• Data and online analytics providers<br>• Online partners and providers*<br>• Insurance related entities**<br>• Third-party product providers<br>• Government entities |

\* Online partners and providers include: Lead sources and aggregators, social media, advertising networks, and other third-party sites, web browsers and search engines.

\*\* Insurance related entities include: People and entities involved in providing insurance, insurance claims, litigation, and fraud prevention and detection.

**Disclosure and Sale of Personal Information**

***Regardless of your age, none of the NGHC companies sell your Personal Information regulated by CCPA. Federal and state laws have strict regulations about sharing and selling financial and insurance related nonpublic Personal Information.***

**Use and Sharing of Personal Information with Affiliates and Non-Affiliates**

We disclose Personal Information to our business affiliates and subsidiary partners, vendors, service providers, advertisers, and other third parties to provide you with superior service and to inform you of product and service opportunities that may be of interest to you. We may share any of the nonpublic Personal Information we collect about you and your accounts, as described above, as permitted by law. Our sharing of information about you is subject to your rights, detailed in this policy. We may use or disclose the Personal Information we collect for one or more of the following business purposes including the examples noted below:

| Business Purpose | Examples |
|---|---|
| 1. Performing Services | a. To fulfill the reason for which you provide us the information, such as quoting premiums, underwriting insurance, servicing insurance policies, and adjusting claims.<br>b. To provide you with information, products, or services that you request from us or any of our authorized representatives, such as insurance agents and claims adjustors.<br>c. To provide you with email alerts, web portal registrations, and other notices concerning our products or services, or to provide other related information or news that may be of interest to you.<br>d. To carry out our obligations and enforce our rights arising from any contracts entered between you and us, including for billing and collections. |
| 2. Security | To protect the rights, property, or safety of us, our clients, or others as necessary or appropriate. |
| 3. Certain Short-term Uses | To improve our interactions with you and other consumers, e.g. during visits to one of our websites or when providing digital content. |
| 4. Auditing | a. To improve our websites and operational procedures.<br>b. To enhance your experience with our products and communication.<br>c. To provide required information for internal and external audits for regulatory, legal, financial, technical, and operational compliance. |
| 5. Internal Research for Technical Development | a. For developing new technological solutions, improve efficiency and effectiveness of operations, and maintain products at or above industry standards.<br>b. To improve customer experience when interacting with staff and utilizing our services. |
| 6. Debugging | Identifying and repairing errors in our products, services, and related systems. |
| 7. Quality and Safety Maintenance and Verification | a. To assure accessibility and usability of our services and products as required by state and federal law.<br>b. To comply with data security and privacy standards and protect sensitive information from unauthorized access. |
| 8. Operational and Other Purposes | a. To participate, as permitted by law, in academic and non-profit policy research.<br>b. To respond to law enforcement or regulatory agency requests, as required by applicable law, court order, or government regulations.<br>c. To evaluate or conduct a merger, divestiture, restructuring, reorganization, dissolution, or other sale or transfer of some or all of our assets or subsidiaries, whether as a going concern or as part of bankruptcy, liquidation, or similar proceeding, in which Personal Information held by us is among the assets transferred. |

|   | d. To fulfill the purpose as otherwise described to you at the time we collect your Personal Information, or as otherwise set forth in the CCPA. |
|---|---|
|   | e. To fulfill any of the above purposes on your or our behalf, we may disclose your Personal Information to other businesses or government agencies such as:<br><br>i. Financial service providers, such as credit card issuers, insurance companies, and insurance agents.<br><br>ii. Non-financial companies, such as credit reporting agencies, manufacturers, motor vehicle dealers, management companies, attorneys in fact, and telecommunication companies.<br><br>iii. Companies that perform business or professional services, such as printing, mailing, data processing, analysis, or customer survey services, on our behalf.<br><br>iv. Other companies we do business with to offer or provide financial products and services. |

We will not collect additional categories of Personal Information, or use the Personal Information we collected, for materially different, unrelated, or incompatible purposes without providing you prior notice. We will disclose your nonpublic Personal Information, without notice, only if required or allowed to do so by law, or otherwise with your consent or in the good faith belief that such action is necessary to:

1. Conform to the requirements of the law or comply with legal process served on us;
2. Protect and defend our rights or property;
3. Act under emergency circumstances to protect the personal safety of our customers, or the public;
4. Assist in the underwriting and servicing of insurance policies written by us or through non-affiliated parties;
5. Process insurance claims.

## How We Protect the Information that We Collect about You and Your Accounts

To protect the privacy and security of nonpublic Personal Information we collect about you, we restrict access to the information to our employees, affiliates, service providers, agents and subcontractors who need this information to provide products and services to you. We maintain physical, electronic, and procedural safeguards that comply with applicable federal and state laws and regulations to guard your nonpublic Personal Information. We strive to keep our information about you accurate. We require those individuals to whom we permit access to your customer information to protect it and keep it confidential.

### *YOUR RIGHTS*

#### Right to Know

You have the right to know specific things about CCPA-regulated Personal Information that we have about you. You can request that we provide you with any or all of the following information:

1. The specific pieces of Personal Information we collected about you;
2. The categories of Personal Information we collected about you;
3. The categories of sources for the Personal Information we collected about you;
4. Our business purpose for collecting your Personal Information;
5. The categories of Personal Information we disclosed for a business purpose about you;
6. The categories of third parties with whom we share that Personal Information.

The above right applies to your Personal Information from the previous 12 months from the date we receive your request to know. Before we can disclose this information to you, we must verify your identity and the request as outlined in the "Exercising Your CCPA Rights" section below.

For more information about your Right to Know, visit our Consumer Privacy Portal at www.NGHCPrivacy.com/ca-right-to-know or call us toll-free at 833-303-2724.

If you wish to review or correct nonpublic Personal Information about your account, please contact your insurance agent or a customer service representative at the contact information on your account statement or other account materials. If you believe there is an error in such Personal Information, please inform us and we will update our records promptly.

### Right to Request Deletion of Personal Information Collected from You

You have the right to request that we delete your CCPA-regulated Personal Information that we collected from you and retained. Our fulfillment of your request is subject to certain exceptions including those listed below. If no exception applies, and we are able to verify your identity and request as outlined in the "Exercising Your CCPA Rights" section below, we will delete (and direct our Service Providers to delete) your self-provided Personal Information from our records.



**Deletion Exceptions**

We may deny your deletion request if retaining the information is necessary for us (or our service providers) to:

1. Complete the transaction for which we collected the Personal Information, provide a good or service that you requested, take actions reasonably anticipated within the context of our ongoing business relationship with you, or otherwise perform our contract with you.
2. Detect security incidents, or prosecute those responsible for such activities.
3. Protect against malicious, deceptive, fraudulent, or illegal activity, or prosecute those responsible for such activities.
4. Debug products to identify and repair errors that impair existing intended functionality.
5. Exercise free speech, ensure the right of another consumer to exercise his or her free speech rights, or exercise another right provided for by law.
6. Comply with the California Electronic Communications Privacy Act (Cal. Penal Code § 1546 et seq.).
7. Engage in public or peer-reviewed scientific, historical, or statistical research in the public interest that adheres to all other applicable ethics and privacy laws, when the information's deletion may likely render impossible or seriously impair the research's achievement, if you previously provided informed consent.
8. Enable solely internal uses that are reasonably aligned with Consumer expectations based on your relationship with us.
9. Comply with a legal obligation.
10. Make other internal and lawful uses of that information that are compatible with the context in which you provided it.

For more information about your Right to Request Deletion, visit our Consumer Privacy Portal at www.NGHCPrivacy.com/ca-right-to-delete or call us toll-free at 833-303-2724.

**Right to Non-Discrimination**

We will not discriminate against you for exercising your privacy rights. Unless permitted by law, we will not:

1. Deny you goods or services.
2. Charge you different prices or rates for goods or services, such as granting discounts or other benefits, or imposing penalties.
3. Provide you a different level or quality of goods or services.
4. Suggest that you may receive a different price or rate for goods or services or a different level or quality of goods or services.

**Response Timing and Fulfillment**

- We will attempt to respond to verifiable Consumer requests within 45 days of receipt. If we require additional time (up to an additional 45 days, for a total of up to 90 days), we will inform you in writing of the extension period and the reason it is needed. The process for verifying the identity of the requestor is described below, under "Exercising Your Rights."
- If you have an online account with us, at our option, we can deliver our written response to that account.
- If we do not deliver our response via your online account with us, we will deliver our written response by mail or electronically, at your option. We will use a secure email portal to deliver information to you electronically.
- Any disclosures we provide will only cover the 12-month period preceding our receipt of the verifiable consumer request.
- The response we provide will also explain the reason(s) we cannot comply with a request, if applicable.
- We do not charge a fee to process or respond to your verifiable consumer request unless it is excessive, repetitive, or manifestly unfounded. If we determine that the request warrants a fee, we will tell you why we made that decision and provide you with a cost estimate before completing your request.

**Right to Opt Out**

You have multiple rights that, when exercised, limit our disclosure of your Personal Information including the following:

**CCPA:** CCPA grants consumers the right to prohibit certain businesses from selling their Personal Information to third parties. **However, under CCPA none of the NGHC family of companies sell your Personal Information.**

**Affiliate Marketing:** Federal law gives you the right to limit our sharing of your NPI across NGHC affiliates for marketing products and services, in some cases. This means you can prohibit the NGHC company with whom you have an account from sharing your NPI with some NGHC affiliates for their own marketing purposes.

**Information Sharing with Affiliates and Non-Affiliates:** With your prior consent, we will share your Personal Information with our trusted network of partners to help you obtain information that you have requested. For example, we do this when you submit your information to us to obtain insurance quotes. Additionally, some Information Sharing is permitted by law and is necessary to run our everyday business, such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus. However, federal law also gives you the right to limit some of your NPI (i.e. your credit worthiness) from being shared between affiliates in NGHC for everyday business purposes. You may also limit our sharing of your NPI with non-affiliated third parties for their own marketing purposes.

If you choose to limit our sharing as allowed above, your choice will be applied to your policy and the NPI of all individuals covered by it. You may make your choice to opt out at any time. However, if we do not hear from you, we may share some of your information with affiliates and with other companies with whom we have contracts to provide products and services.

## Exercising Your Rights

To exercise your **Right to Know** or your **Right to Request Deletion** under CCPA, please submit a verifiable consumer request to us by visiting our Consumer Privacy Portal at www.NGHCPrivacy.com/ca-request or call us toll-free at 833-303-2724.

We are required by law to verify your request and identity before fulfilling these requests. You must provide sufficient information that allows us to reasonably verify you are the person about whom we have collected Personal Information like name, address, contact information, and date of birth. Most of this information is collected when you submit your request through the Consumer Privacy Portal. Once your request is successfully received, we will provide additional details about the process for completing your request.

Our customers will be required to provide the information used to service their accounts, including policy number. Consumers without a policy will be required to submit a copy of the front and back of their government-issued photo ID as well as a photo of themselves while holding that photo ID. If a government-issued photo ID is not available, you may submit an affidavit of your identity. You can find a copy of this form on the privacy portal at https://NGHCPrivacy.com/pdf/ca-identity-affidavit.pdf, or you can request that we mail or email a copy to you by calling the number above.

You may opt to assign an Authorized Agent to submit a request on your behalf. This can be a person or a business registered with the California Secretary of State. Your Authorized Agent can use the same URL or toll free number provided above to submit your request. In addition to verifying your identity as outlined above, we must also verify that this person or business is authorized to act on our behalf. They will be required to submit their own information as well as an affidavit of your identity, and a properly executed power of attorney that describes you, your designated authorized agent, and the purpose of the designation.

Making a verifiable consumer request does not require you to create an account with us. To ensure the security of your information and your request, we will use a secure email portal to correspond with you electronically. We will only use Personal Information provided in a consumer request to verify the requestor's identity or authority to make the request, to verify the identity of the subject of the request (if a different individual), to fulfill the request, if possible, and to ensure our compliance with and fulfill our obligations under CCPA and other applicable laws.

Only you or your Authorized Agent may make a verifiable consumer request related to your Personal Information. We will process a request for you free of charge up to two times within any 12-month period.

To exercise your **Right to Opt Out** of Affiliate Marketing and Information Sharing, as noted above, you may do one of the following:

1. Visit our Consumer Privacy Portal and submit your request to opt out at www.NGHCPrivacy.com/ca-request.
2. Call us toll-free at 833-303-2724 and leave a message with our Privacy Team.
3. Complete the enclosed "Important Privacy Choices for Consumers" form attached as Exhibit A to this notice and mail it to the address on your most recent statement. (You may also request that we send you a business reply postage paid envelope in order to return your completed form by calling the number on your statement.)

You will be required to provide your policy number and NGHC company name with whom you have an account because your Right to Opt Out applies to your policy and the NPI associated with it for yourself and others covered by the policy. Your choice to opt out remains in effect unless you expressly tell us otherwise. This means **you have to request to opt out only once for your policy** even though the information about the right to opt out is still included in our annual privacy notice as required by law. Selecting to opt you out of Information Sharing or to limit Affiliate Marketing as described above will opt you out of both. Each time you establish a new account with a company in NGHC, you will have the opportunity to opt out for that account as well. If you have a joint account with another person, either of you may opt out, as described above, for both of you.



**ADDITIONAL INFORMATION**

## Privacy Metrics

CCPA requires that we publish annual metrics from the previous calendar year regarding our processing of CCPA requests. The metrics can be found on our Consumer Privacy Portal at https://NGHCprivacy.com/ca-ag-metrics.

## Contact Information for Questions or Concerns

If you have questions or concerns about NGHC privacy policies and practices, you may contact us via email at NGHCsupport@nghcprivacy.com. Please do not send sensitive information to this email address. Optionally, if you have already submitted a privacy request with us, and we have contacted you via secure email, you may respond to that email if you need to provide sensitive information. You may also leave a message for our Privacy Team by calling toll-free at 833-303-2724. Please include your name, contact information, policy number (if applicable), and your question or concern.

## Frequency of Notification of Your Privacy Rights

Each time you establish a new account with a company in NGHC, you will receive a privacy notice. You may review your privacy rights anytime by visiting our Consumer Privacy Portal at https://NGHCPrivacy.com/ca-privacy-policy.

## Modifications to Our Privacy Policy

We reserve the right to change our privacy practices in the future, which may include sharing nonpublic Personal Information about you with nonaffiliated third parties, as permitted by law. We will occasionally update this Privacy Policy to reflect company and customer feedback, new or removed NGHC entities, as well as legal and regulatory changes. We encourage you to periodically review this Statement to be informed of how we collect, use, share, and protect your Personal Information. Updates to this policy can be found at https://NGHCPrivacy.com/ca-privacy-policy.

**Subsidiaries of National General Holdings Corp. as of 31 December 2019, include:** National General Motor Club, Inc.; MIC General Insurance Corporation; National General Assurance Company; National General Insurance Company; National General Insurance Online Inc; Healthcare Solutions Team, LLC; Assigned Risk Solutions, Ltd.; Adirondack AIF, LLC; Adirondack Insurance Exchange; Mountain Valley Indemnity Company; New Jersey Skylands Management, LLC; New Jersey Skylands Insurance Association; Imperial Fire and Casualty Insurance Company; Imperial General Agency of Texas, Inc.; ABC Agency Network, Inc.; ABC Agency Network of Texas, LLC; Imperial Insurance Managers, LLC; Imperial Marketing Corporation; RAC Insurance Partners, LLC; National General Management Corp.; Integon Casualty Insurance Company; Integon General Insurance Corporation; Integon Indemnity Corporation; National Health Insurance Company; Integon National Insurance Company; Agent Alliance Insurance Company; National General Premier Insurance Company; Personal Express Insurance Services, LLC; Integon Preferred Insurance Company; New South Insurance Company; National General Insurance Marketing, Inc; Clearside General Insurance Services; Velapoint,LLC; America's Health Care/RX Plan Agency, Inc.; National General Lender Services, Inc.; Seattle Specialty Insurance Services, Inc.; NGLS Insurance Services, Inc.; Newport Management Corporation; John Alden Financial Corp.; NSM Sales Corporation; Century-National Insurance Company; Western General Agency, Inc.; NGLS Adjusting, LLC; Standard Property and Casualty Insurance Company; Direct General Insurance Company; Direct General Insurance Company of Mississippi; Direct General Life Insurance Company; Direct Administration, Inc; Direct Brevard, LLC; Direct Bay, LLC; Direct Insurance Company; Direct National Insurance Company; Direct General Financial Services, Inc; Direct General Premium Finance Company; Direct General Insurance Agency, Inc; Right Choice Insurance Agency, Inc; Direct Adjusting Company, Inc.; Direct General Consumer Products, Inc; HealthCompare Insurance Services, Inc.; Quotit Corporation; AgentCubed, LLC; LeadCloud, LLC; Health Network Group, LLC; Syndeste, LLC; National Farmers Union Property and Casualty Company; National General Re, Ltd.; Integon Service Co, S.A. de C.V.; Allied Producers Reinsurance Company, Ltd.

**Affiliates of National General Holdings Corp. include:** companies in the National General Holdings Corp. referenced in this notice and companies that now or in the future control, are controlled by, or are under common control with a company in National General Holdings Corp.

EXHIBIT A

## Important Privacy Choices for Consumers

**You have the right to control whether we share some of your personal information.**
**Please read the following information carefully before you make your choices below.**

### Your Rights

You have the following rights to restrict the sharing of personal and financial information with our affiliates (companies we own or control, or that own or control us) and outside companies that we do business with. Nothing in this form prohibits the sharing of information necessary for us to follow the law, as permitted by law, or to give you the best service on your accounts with us. This includes sending you information about some other products or services.

### Your Choice

**Restrict Information Sharing With Companies We Own or Control, or That Own or Control Us (Affiliates):** Unless you direct us not to, we may share personal and financial information about you with our affiliates (and those affiliates may use the information to market to you).

**Restrict Information Sharing With Other Companies We Do Business With To Provide Financial Products and Services:** Unless you direct us not to, we may share personal and financial information about you with outside companies we contract with to provide financial products and services to you.

-----------------------------------------------------------------------------------------------------------------------------------

☐  No, please do not share personal and financial information about me with your affiliates or with outside companies you contract with to provide financial products and services.

### *Time Sensitive Reply*

You may make your choice at any time. Your choice marked here will remain unless you state otherwise. However, if we do not hear from you, we may share some of your information with affiliates and with other companies with whom we have contracts to provide products and services.

**John Joe Castorina**

Name

**Q-6066599**

Policy Number

Signature

Date



3208-17-00-0000409-0019-0007376

# Exhibit C

# BANK OF AMERICA

P.O. Box 31785
Tampa, FL 33631-3785

| | | |
|---|---|---|
| | bankofamerica.com | |
| | Customer service: | 800.669.6650 |
| | En Español: | 800.295.0025 |
| | Property insurance inquiries: | 866.265.3321 |

| | |
|---|---|
| Account number | 9445 |
| Statement date | 06/10/2021 |
| **Total amount due** | **$0.00** |

HL 0615      402 051      09946 #@01 AB 0.428

JOHN JOE CASTORINA
2110 FORESTLAKE DR
RNCHO CORDOVA CA 95670-2409

*[handwritten]* PRINCIPAL PAYMENT — 449.73
ESCROW PAYMENT — 384.82
TOTAL 834.55
+ ESCROW 500.00
TOTAL 1334.55

## Home Loan Account

**Your loan is in the foreclosure process.** The Total amount due is the estimated amount to reinstate this loan as of June 10, 2021. This is not a payoff amount and is subject to change. Fees, costs and other charges incurred but not yet billed to your loan as of this date are not included. To reinstate, pay off or discuss available workout options, please call your Customer Relationship Manager at the number above.

## Account Information

| | |
|---|---|
| Property address | 2110 FOREST LAKE DRIVE |
| Principal balance | $82,166.89 |
| Other deferred balances* | $3,066.50 |
| Escrow balance | $466.33 |
| Interest rate | 3.500% |
| Prepayment penalty | No |

## Explanation of total amount due

| | |
|---|---|
| Current period fees and charges | $0.00 |
| **Total amount due** | **$0.00** |

| | |
|---|---|
| Accelerated amount due* as of 06/10/2021 | $104,844.58 |

## Past payments breakdown

| | Paid since last statement | Paid year to date* |
|---|---|---|
| Principal | $4,470.23 | $4,470.23 |
| Interest | $5,423.83 | $5,423.83 |
| Escrow | $8,539.21 | $8,539.21 |
| Fees, charges, and advances | $1,839.29 | $1,839.29 |
| Unapplied funds* | -$250.08 | -$250.08 |
| **Total** | **$20,022.48** | **$20,022.48** |

*Please see the **Other important information** section of this statement.*

JOHN JOE CASTORINA | Acct ending in 9445 | 06/10/2021 | Page 2 of 6

## Transaction activity (05/18/2021 to 06/10/2021)

| Post Date | Description | Amount |
|---|---|---|
| 05/27/2021 | Property Inspection | $17.50 |
| 06/10/2021 | Property Inspection | -$17.50 |
| 06/10/2021 | Property Inspection | -$17.50 |
| 06/10/2021 | Property Inspection | -$17.50 |
| 06/10/2021 | Bankruptcy Proof of Claim | -$75.00 |
| 06/10/2021 | Property Inspection | -$17.50 |
| 06/10/2021 | Mailing Fee | -$75.81 |
| 06/10/2021 | Property Inspection | -$17.50 |
| 06/10/2021 | BK Attorney Plan Review | -$575.00 |
| 06/10/2021 | Property Inspection | -$17.50 |
| 06/10/2021 | Property Inspection-Vacant | -$17.50 |
| 06/10/2021 | Mailing Fee | -$12.92 |
| 06/10/2021 | Title Fee | -$360.00 |
| 06/10/2021 | Property Inspection | -$17.50 |
| 06/10/2021 | Mailing Fee | -$52.08 |
| 06/10/2021 | Attorney/Trustee Fee | -$425.00 |
| 06/10/2021 | Recording Fee | -$101.00 |
| 06/10/2021 | Payment(s) Posted - Thank you | $250.08 |
| 06/10/2021 | Unapplied funds | -$250.08 |
| 06/10/2021 | Payment(s) Posted - Thank you | $750.71 |
| 06/10/2021 | Payment(s) Posted - Thank you | $750.71 |
| 06/10/2021 | Payment(s) Posted - Thank you | $750.71 |
| 06/10/2021 | Payment(s) Posted - Thank you | $750.71 |
| 06/10/2021 | Payment(s) Posted - Thank you | $750.71 |
| 06/10/2021 | Payment(s) Posted - Thank you | $750.71 |
| 06/10/2021 | Payment(s) Posted - Thank you | $840.49 |
| 06/10/2021 | Payment(s) Posted - Thank you | $840.49 |
| 06/10/2021 | Payment(s) Posted - Thank you | $840.49 |
| 06/10/2021 | Payment(s) Posted - Thank you | $840.49 |
| 06/10/2021 | Payment(s) Posted - Thank you | $840.49 |
| 06/10/2021 | Payment(s) Posted - Thank you | $840.49 |
| 06/10/2021 | Payment(s) Posted - Thank you | $840.49 |
| 06/10/2021 | Payment(s) Posted - Thank you | $891.46 |
| 06/10/2021 | Payment(s) Posted - Thank you | $891.46 |
| 06/10/2021 | Payment(s) Posted - Thank you | $891.46 |
| 06/10/2021 | Payment(s) Posted - Thank you | $891.46 |

Bank of America, N.A. Member FDIC.   Equal Housing Lender.
©2021 Bank of America Corporation. Trademarks are the property of Bank of America Corporation. All rights reserved.
Credit and collateral are subject to approval. Terms and conditions apply. This is not a commitment to lend. Programs, rates, terms and conditions are subject to change without notice.

**BANK OF AMERICA** 

**Home Loan Account**

| JOHN JOE CASTORINA | Acct ending in 9445 | 06/10/2021 | Page 3 of 6 |

## Transaction activity

| Post Date | Description | Amount |
|-----------|-------------|--------|
| 06/10/2021 | Payment(s) Posted - Thank you | $891.46 |
| 06/10/2021 | Payment(s) Posted - Thank you | $834.55 |
| 06/10/2021 | Payment(s) Posted - Thank you | $834.55 |
| 06/10/2021 | Payment(s) Posted - Thank you | $834.55 |
| 06/10/2021 | Payment(s) Posted - Thank you | $834.55 |
| 06/10/2021 | Late charge - Paid | $22.48 |
| 06/10/2021 | Escrow disbursement | $250.08 |

## Additional contact information

**Housing counselor information:**  For counseling or assistance, contact the U.S. Department of Housing and Urban Development (HUD). For a list of homeownership counselors or counseling organizations in the area, go to hud.gov/offices/hsg/sfh/hcc/hcs.cfm or call 800.569.4287.

| General inquiries | Property insurance inquiries | Property claim inquiries |
|-------------------|------------------------------|--------------------------|
| Bank of America, N.A. | Insurance Dept. | Bank of America, N.A. |
| Correspondence Unit | P.O. Box 961291 | Attention: Property Claims Dept. |
| FL-1-908-01-49 | Fort Worth, TX 76161-0291 | CA6-921-02-36 |
| P.O. Box 31785 | Phone:  866.265.3321 | 450 American St. |
| Tampa, FL 33631-3785 | Fax:  800.293.8158 | Simi Valley, CA 93065-6285 |
| | ihaveinsurance.com/bankofamerica | Phone: 800.669.6076 |
| | | Fax: 888.855.9562 |

**Notice of Error, Requests for Information and Qualified Written Requests (as defined in RESPA) must be sent to:**  Bank of America, N.A. Attention: Notice of Error and Request for Information P.O. Box 942019, Simi Valley, CA 93094-2019. Federal law provides certain rights to resolve errors and request information related to the account. For more information about these rights, go to bankofamerica.com or contact us.

**BANK OF AMERICA**

**Home Loan Account**



| JOHN JOE CASTORINA | Acct ending in 9445 | 06/10/2021 | Page 5 of 6 |

**Escrow refunds -** We process and mail escrow refunds within (14) business days after payoff to your mailing address on our loan servicing system.
• You can update your mailing address on our loan servicing system by calling customer service or through Bank of America's Online Banking service available on our website at bankofamerica.com.
• Please review the escrow section to review escrow items currently due and unpaid.
• If a bill is received for payment of an escrow item during the pending payoff process, we are responsible for payment of such bill. The bills are typically paid between the due date and delinquency date. If loan payoff occurs prior to disbursement of payment of a bill, your escrow funds will be refunded to you.

**Late fee -** The Late fee shown on this statement may not be charged in limited circumstances, such as: changes to your account relating to loan modification trial plans, foreclosure, bankruptcy, natural disaster, and special forbearance on your loan, or due to applicable State or Federal law requirements.

**Other deferred balances -** This shows the sum of any non-principal deferred balances owed. This can include, but is not limited to, deferred interest from a deferred payment plan, or deferred amounts from a loan modification. You will need to repay these balances under the applicable repayment terms for these balances, such as when you pay-off your loan.

**Paid year-to-date -** Balances in the "Past payments breakdown" section shouldn't be used for year-end tax reporting because the two amounts may differ. Please use the information on IRS Form 1098, which will be provided during tax season, for reporting purposes. Balances for loans that have been service-transferred may reflect activity that has occurred since the date of transfer.

**Payoff -** You can request a payoff quote by calling 800.669.5833. If a third party will be requesting a payoff quote on your behalf, you must authorize the third party to make the request. A fax fee may apply if you or a third party want the payoff quote faxed. If so, the amount of the fee will be disclosed at the time the expedited delivery is requested. If we receive payoff funds greater than the amount required to pay off your loan, we'll process and mail a refund of the overage to your mailing address on our loan servicing system within 20 business days of the payoff. You can update your mailing address on our loan servicing system by calling customer service or through Bank of America's Online Banking service available on our website at bankofamerica.com.

**Statement information -** The information contained in this statement is accurate as of the date of this statement but may not contain all information related to your loan. For the most up to date and complete information regarding your loan, please contact customer service.

**Unapplied funds -** Depending on the specific requirements of the loan or applicable law, funds sent to us cannot be applied to the loan and we hold these funds in a non-interest-bearing account until they can be applied. For example, if a partial payment (i.e. a payment less than the full periodic payment) is received, we may be unable to apply the payment to the loan and will hold the funds in the non-interest-bearing account for a period of time until additional funds are received and sufficient to equal a full periodic payment. If additional funds are not received, subject to the loan documents, we may apply some or all of the unapplied funds to amounts owed on the account and return the balance of the unapplied funds. This balance represents the amount of the funds being held in the non-interest-bearing account, as of the date of this statement.