| | |
|---|---|
| 1 | Margaret E. Dayton (SBN 274353) |
| 2 | PEDayton@winston.com |
| | Janelle Li-A-Ping (SBN 330805) |
| 3 | JLiAPing@winston.com |
| | **WINSTON & STRAWN LLP** |
| 4 | 333 South Grand Avenue |
| | Los Angeles, California 90071-1543 |
| 5 | T: +1 213-615-1700 |
| | D: +1 213-615-1988 |
| 6 | |
| 7 | *Attorneys for Defendant* |
| | INTEGON NATIONAL INSURANCE |
| 8 | COMPANY |

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN CASTORINA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A. and INTEGON NATIONAL INSURANCE COMPANY,<br><br>Defendants. | Case No. 2:21-CV-02004-WBS-KJN<br><br>**DEFENDANT INTEGON NATIONAL INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>*[Filed concurrently with [Proposed] Order Granting Motion to Dismiss]*<br><br>Date: April 18, 2022<br>Time: 1:30 p.m.<br>Judge: Hon. William B. Shubb<br>Dept.: Courtroom 5 |

# NOTICE OF MOTION AND MOTION

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on April 18, 2022 at 1:30 p.m., or as soon thereafter as this matter can be heard, in the Courtroom of the Honorable William B. Shubb (Courtroom 5) of the above-entitled Court, located at 501 I Street, Suite 4-200, 14th Floor, Sacramento, California, 95814, Defendant Integon National Insurance Company ("Integon"), will, and hereby does, move the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing the claims which Plaintiff John Castorina has asserted against it.

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, and all pleadings, papers, and documents on file herein, and any other written or oral submissions that may be presented at or before the hearing on this Motion.

Dated: March 7, 2022  Respectfully submitted,

WINSTON & STRAWN LLP

By: _____
Margaret E. Dayton

*Attorneys for Defendant*
INTEGON NATIONAL INSURANCE COMPANY

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 6

II. SUMMARY OF RELEVANT ALLEGATIONS AS TO INTEGON ................................. 7

    A. Plaintiff's Allegations Regarding LPI ............................................................... 7

    B. Plaintiff's RICO Claims ..................................................................................... 8

III. ARGUMENT .................................................................................................................. 8

    A. Legal Standard ................................................................................................... 8

    B. Count V Must Be Dismissed Because It Fails To Adequately Allege a RICO Violation Under 18 U.S.C. § 1962(c) ............................................................... 9

        i. Plaintiff Fails To Allege a RICO Enterprise ......................................... 9

        ii. Plaintiff Fails To Allege Two Predicate Acts With Particularity and Fails to Plausibly Indicate How Any Communication Was Misleading, As Required By Rule 9(b) ................................................................... 11

        iii. Plaintiff Does Not Allege a Plausible Intent to Defraud ..................... 13

        iv. Plaintiff Cannot Allege Proximate Cause or Cognizable Damages .... 14

    C. Count V Should Be Dismissed Because Plaintiff Improperly Seeks to Transform His Breach of Contract Claim Against BANA Into a RICO Claim Against Integon ............................................................................................................ 15

    D. Count VI Must Be Dismissed Because The Complaint Fails to Allege a Violation of RICO to Support the Conspiracy Claim ...................................... 16

IV. CONCLUSION .............................................................................................................. 16

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ...................................................................................................8, 11

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ...................................................................................................8, 11

*Canyon County v. Syngenta Seeds, Inc.*,
 519 F.3d 969 (9th Cir. 2008) ...........................................................................................14

*Cirino v. Bank of America, N.A.*,
 No. 13-cv-8829 PSG (MRWx), 2015 WL 3669078 (C.D. Cal. Feb. 10, 2015) .........9, 10

*Cohen v. American Sec. Ins. Co.*,
 735 F.3d 601 (7th Cir. 2013) ...........................................................................................14

*Eller v. EquiTrust Life Ins. Co.*,
 778 F.3d 1089 (9th Cir. 2015) .........................................................................................12

*Gustafson v. BAC Home Loans Srvc., LP*,
 No. SACV 11-915-JST (ANx), 2012 WL 7051318 (C.D. Cal. Dec. 20, 2012) ..... *passim*

*Kearns v. Ford Motor Co.*,
 567 F.3d 1120 (9th Cir. 2009) ...........................................................................................9

*MacKay v. Superior Court*,
 188 Cal.App.4th 1427 (2010) ..........................................................................................15

*Manos v. MTC Financial, Inc.*,
 No. 16-01142-CJC (KESx), 2017 WL 8236356 (C.D. Cal. Dec. 21, 2017) ............11, 13

*Manos v. MTC Financial, Inc.*,
 No. 16-01142-CJC (KESx), 2018 WL 6220051 (C.D. Cal. Apr. 2, 2018) ..........7, 12, 15

*Medallion Television Enters., Inc. v. SelecTV of Cal., Inc.*,
 833 F.2d 1360 (9th Cir. 1987) .........................................................................................11

*Meyer v. One West Bank, F.S.B.*,
 91 F.Supp.3d 1177 (C.D. Cal. 2015) ..............................................................6, 9, 13, 14

*Moss v. U.S. Secret Serv.*,
 572 F.3d 962 (9th Cir. 2009) .............................................................................................9

*Patel v. Specialized Loan Serv. LLC*,
 183 F.Supp.3d 1238 (S.D. Fla. 2016) *aff'd* 904 F.3d 1314 (11th Cir. 2018) ...................15

*Royce Int'l Broad. Corp. v. Field*,
  No. C 99-4169 SI, 2000 WL 236434 (N.D. Cal. Feb. 23, 2000) ................................................... 15

*Saul v. United States*,
  928 F.2d 829 (9th Cir. 1991) ........................................................................................................ 9

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
  806 F.2d 1393 (9th Cir.1986) ................................................................................................ 9, 11

*Turner v. Cook*,
  362 F.3d 1219 (9th Cir. 2004) ..................................................................................................... 16

*Vega v. Ocwen Fin. Corp.*,
  No. 2:14-cv-04408-ODW (PLAx), 2015 WL 1383241 (C.D. Cal. Mar. 24, 2015) ................ 7, 15

*In re Wellpoint, Inc. Out-of-Network UCR Rates Litig.*,
  865 F.Supp.2d 1002 (C.D. Cal. 2011) ........................................................................................ 11

**Statutes**

18 U.S.C. § 1962(c) ............................................................................................................... 8, 9, 16

18 U.S.C. § 1962(d) ................................................................................................................. 8, 16

**Other Authorities**

Fed. R. Civ. P. 8 ........................................................................................................................ 7, 11

Fed. R. Civ. P. 9(b) ......................................................................................................... 7, 9, 11, 13

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.   **INTRODUCTION**

Plaintiff John Castorina's sprawling Complaint alleges only two claims for civil RICO violations against Defendant Integon National Insurance Company ("Integon"). Despite the Complaint's length, the RICO claims are devoid of supporting factual allegations. Plaintiff does not sufficiently allege the elements of a RICO claim: he does not allege a RICO enterprise; he fails to allege predicate acts with Federal Rule of Civil Procedure[1] 9(b)'s required particularity; and he does not demonstrate causation or cognizable damages.

In addition to these pleading deficiencies, Plaintiff's RICO claims suffer from fundamental and incurable defects.

First, Plaintiff cannot plausibly allege that Bank of America, N.A. ("BANA") and Integon had an intent to defraud or a common purpose to force Plaintiff to pay for "inflated" lender-placed insurance ("LPI"). Defendants disclosed that LPI may be "significantly more expensive" and "may not provide as much coverage" as an insurance policy that Plaintiff could buy for himself, and that BANA may receive compensation in connection with LPI. Indeed, Defendants "strongly encourage[d] [Plaintiff] not to rely on Lender-Placed Insurance."[2] As other courts have noted when dismissing nearly identical RICO claims, such disclosures are "incompatible with allegations of a scheme intended to deceive."[3] "Letters that warn of an imminent bad deal and urge one to seek better," cannot possibly be calculated to deceive anyone.[4]

Second, courts regularly dismiss attempts to expand the reach of the RICO statute to encompass mere commercial or contractual disputes like this one. To hold otherwise would allow

---

[1] Unless otherwise indicated, any reference to a "Rule" is to the Federal Rules of Civil Procedure.

[2] Dkt. # 1-1 (Ex. B) at p. 15.

[3] *See Meyer v. One West Bank, F.S.B.*, 91 F.Supp.3d 1177, 1184-85 (C.D. Cal. 2015) (dismissing RICO claim based on "scheme" to pay "kickbacks" to servicer for LPI where disclosures stated that LPI might be more expensive and that servicer might receive compensation); *Gustafson v. BAC Home Loans Serv., LP*, No. SACV 11-915-JST (ANx), 2012 WL 7051318, at *7 (C.D. Cal. Dec. 20, 2012) (dismissing RICO claim based on failure to disclose the "reasons for high cost of" LPI where disclosures stated that LPI might be more expensive and that servicer might receive compensation).

[4] *See Gustafson*, 2012 WL 7051318, at *7 (citation omitted).

civil RICO law, already a behemoth, to swallow state civil and criminal law whole.[5]

As set forth fully below, Plaintiff's RICO claims fail to satisfy Rule 8's plausibility requirement and Rule 9(b)'s particularity requirement. Dismissal with prejudice is required.

## II. SUMMARY OF RELEVANT ALLEGATIONS AS TO INTEGON[6]

### A. Plaintiff's Allegations Regarding LPI

Integon provides LPI for properties in BANA's loan portfolio when the individual borrower fails to maintain hazard insurance on the mortgaged property. (Compl. ¶¶ 112-114.) Plaintiff alleges that pursuant to Integon's contractual arrangement with BANA, Integon "automatically tracked" BANA's loan servicing portfolio "to identify when an individual borrower's voluntary policy had lapse[d]." (*Id.* ¶ 112.) "Once a lapse is identified, an automated cycle of notices" issues "to inform [the borrower] that insurance will be purchased and force-placed if evidence of voluntary coverage is not produced and continued." (*Id.* ¶ 114.) "If a lapse continues or the borrower does not provide evidence of acceptable coverage in the requisite amount time, the borrower is notified that insurance is being force-placed at his or her expense," (*id.*) and "[i]nsurance is automatically placed on the property," (*id.* ¶ 115).

Plaintiff alleges the letters and notices to borrowers regarding LPI "disclose to the borrower that [BANA] may earn commissions or compensation as a result of the forced placement of new coverage." (Compl. ¶ 119; *id.* ¶ 227.c.) And, the April 19, 2021 LPI Notice attached to Plaintiff's Complaint as Exhibit B repeatedly discloses that LPI "[m]ay be significantly more expensive" and "[m]ay not provide as much coverage" as an insurance policy that a borrower can buy for himself or herself. (Dkt. # 1-1 (Ex. B) at pp. 12, 15, 16.) The LPI Notice "strongly encourage[s] [the borrower] not to rely on Lender-Placed Insurance." (*Id.* at p. 15.)

---

[5] *See, e.g.*, *Vega v. Ocwen Fin. Corp.*, No. 2:14-cv-04408-ODW (PLAx), 2015 WL 1383241, at *12-*13 (C.D. Cal. Mar. 24, 2015) (dismissing RICO claim based on failure to disclose that property inspections were "unnecessary" in alleged breach of the mortgage agreement); *Manos v. MTC Fin., Inc.*, No. 16-01142-CJC (KESx), 2018 WL 6220051, at *7 (C.D. Cal. Apr. 2, 2018) ("*Manos II*") (dismissing RICO claim based on failure to disclose that allegedly impermissible fees were unauthorized by the contract).

[6] Integon sets out the allegations of Plaintiff's Complaint and accepts them as true only for the purposes of this Motion. Integon reserves its right to challenge the veracity and accuracy of Plaintiff's allegations at the appropriate time.

Plaintiff's mortgage "required him to secure and pay for adequate property insurance that protected the Property against loss due to hazards." (Compl. ¶ 132; Dkt. # 1-1 (Ex. A) at pp. 4-5.) Plaintiff admits his hazard insurance lapsed, and LPI was placed on his property. (Compl. ¶ 143.) Plaintiff does not contest BANA's right to have placed LPI on his property.

### B. Plaintiff's RICO Claims

Plaintiff asserts only two claims against Integon, Count V for violation of 18 U.S.C. § 1962(c), a substantive RICO claim, and Count VI for violation of 18 U.S.C. § 1962(d), a conspiracy RICO claim. With no factual support, the RICO claims allege that Integon and BANA comprised a RICO enterprise that engaged in a scheme to defraud Plaintiff to pay inflated amounts for LPI and conceal from Plaintiff that such amounts included "kickbacks" and "other costs paid as bribes" to BANA. (Compl. ¶¶ 144-146, 232.) Plaintiff alleges that the "common purpose" of the scheme was to "forc[e] Plaintiff and the class members to pay inflated amounts for forced-placed insurance." (*Id.* ¶ 224.) Plaintiff alleges predicate acts of "numerous and repeated violations of federal mail and wire fraud statutes," which are not specified in the Complaint. (*Id.* ¶ 226.) Plaintiff generically alleges that while Defendants disclosed "force-placed insurance would be 'significantly more expensive,'" Defendants failed to disclose *why* force-placed insurance would be more expensive. (*Id.* ¶¶ 234, 144-46, 232, 235.) This purported "omission" forms the basis of Plaintiff's fraud-based RICO claims. (*Id.*) Plaintiff claims damages "in the form of unreasonably high force-placed insurance premiums" that he would not have paid or would have contested. (*Id.* ¶¶ 237-38.)

As set forth below, Plaintiff's conclusory RICO allegations are devoid of supporting factual allegations and contradicted by Defendants' disclosures, which are alleged in and attached to the Complaint.

### III. ARGUMENT

### A. Legal Standard

Dismissal is warranted when a complaint does not contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court should not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

And statements that "do nothing more than state a legal conclusion" are inadequate. *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). In addition, claims that "sound in fraud" must meet the heightened pleading requirements of Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

Although a motion to dismiss may be granted with leave to amend, leave to amend is not required where any "amendment would be futile or where the amended complaint would be subject to dismissal." *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991) (internal citation omitted).

### B. Count V Must Be Dismissed Because It Fails To Adequately Allege a RICO Violation Under 18 U.S.C. § 1962(c)

To state a claim under Section 1962(c), Plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity" that was a "but for" and proximate cause of Plaintiff's injury. *Meyer*, 91 F.Supp.3d at 1182. And, where the alleged predicate acts are mail and wire fraud, a complaint must satisfy Rule 9(b)'s heightened pleading requirements. *See Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1399-1400 (9th Cir. 1986). Rule 9(b) requires that Plaintiff allege "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Gustafson*, 2012 WL 7051318, at *3. Furthermore, "[t]he plaintiff must set forth what is false or misleading about a statement and why it is false." *Id.* at *5.

As set forth below, Plaintiff's substantive RICO claim fails to satisfy Rule 9(b) and the statute's rigorous pleading requirements for multiple reasons.

#### i. Plaintiff Fails To Allege a RICO Enterprise

Plaintiff fails to sufficiently allege a RICO enterprise, as one court found when another plaintiff asserted nearly identical claims against BANA. In *Cirino v. Bank of America, N.A.*, the plaintiff claimed that BANA and a property-inspections vendor, Safeguard Properties LLC, comprised an "enterprise" for RICO purposes, alleging that the two entities "associated together for the common purpose of routinely, and repeatedly, ordering and conducting inspections on delinquent borrowers' properties, without regard to the necessity or reasonableness of the inspections." No. 13-cv-8829 PSG (MRWx), 2015 WL 3669078, at *4 (C.D. Cal. Feb. 10, 2015). In rejecting that theory,

the court reasoned that although the plaintiff had alleged generally that the enterprise's common purpose was to conduct inspections on properties that should not have been inspected, and thus to effectuate an alleged fraud, the plaintiff failed to allege facts that would render this theory plausible. *Id.* For instance, the plaintiff did "not allege that the vendors were involved in deciding when or why to conduct inspections." *Id.* Instead, the plaintiff alleged that the vendor comes "into play when Defendants' automated loan management system orders inspections of all properties that have been delinquent for a specified number of days." *Id.* Accordingly, the complaint did not "support[] that the vendors associated with [BANA] for the common purpose of conducting *unnecessary* or *unreasonable* property inspections; instead, the facts only suggest[ed] that the vendors associated with [BANA] to conduct the property inspections requested (electronically and without elucidation) by [BANA]." *Id.* at *5 (emphasis in original).

The same rationale applies to the LPI context here. As with the plaintiff in *Cirino*, Plaintiff generally alleges that BANA and Integon associated to make Plaintiff "pay inflated amounts for forced-placed insurance through a scheme that inflated such amounts to cover kickbacks and expenses," (Compl. ¶ 224), but allegations elsewhere in the Complaint contradict this bald assertion. For example, Plaintiff alleges that Integon "automatically tracked" BANA's loan servicing portfolio "to identify when an individual borrower's voluntary policy lapse[d]." (*Id.* ¶ 112.) "Once a lapse is identified, an automated cycle of notices" issues, (*id.* ¶ 114), and "[i]nsurance is automatically placed on the property," (*id.* ¶ 115). As in *Cirino*, these facts do not point to a wrongful common purpose between BANA and Integon, only that they associated to place LPI on the property automatically in the event of a lapse in coverage. *See Cirino*, 2015 WL 3669078, at *5; (*see* Compl. ¶¶ 112-15.) Nor do Plaintiff's allegations support any contention that Integon was involved in deciding when or why to apply LPI, further belying any wrongful common purpose. Given the same lack of an alleged common purpose as in *Cirino*, the Court should dismiss Plaintiff's RICO claim for failure to allege a RICO enterprise.

///

///

///

### ii. Plaintiff Fails To Allege Two Predicate Acts With Particularity and Fails to Plausibly Indicate How Any Communication Was Misleading, As Required By Rule 9(b)

"Where RICO is asserted against multiple defendants, a plaintiff must allege at least two predicate acts by *each* defendant." *In re Wellpoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F.Supp.2d 1002, 1035 (C.D. Cal. 2011) (emphasis original). And where, as here, Plaintiff's RICO claims are based on alleged mail and wire fraud, (Compl. ¶¶ 222, 226, 237), the predicate acts must be alleged with particularity under Rule 9(b)'s heightened pleading requirements. *Schreiber*, 806 F.2d at 1399-1400. The Complaint fails to sufficiently allege the required predicate acts.

First, in support of the substantive RICO claim, the Complaint identifies **only one specific communication**, an April 19, 2021 LPI Notice, sent through U.S. mail.[7] (Compl. ¶¶ 233, 235; Dkt. # 1-1 (Ex. B).) But a single predicate act fails to state a RICO claim under well-settled law. *In re WellPoint*, 865 F.Supp.2d at 1035; *Medallion Television Enters., Inc. v. SelecTV of Cal., Inc.*, 833 F.2d 1360, 1365 (9th Cir. 1987) (holding that RICO claims fail when they are applied to a single, isolated transaction). Plaintiff's conclusory allegations that there were "numerous" mail and wire communications, (Compl. ¶¶ 222, 237), cannot salvage the deficient RICO claim. These factually unsupported allegations fail to satisfy Rule 8's pleading requirements, much less the exacting standard of Rule 9(b). *See Iqbal*, 556 U.S. at 677-79; *Twombly*, 550 U.S. at 555; *Manos v. MTC Fin., Inc.*, No. 16-01142-CJC (KESx), 2017 WL 8236356, at *10 (C.D. Cal. Dec. 21, 2017) ("*Manos I*"). Because Plaintiff identifies the time, place, and content of only one alleged predicate act, dismissal is required for this reason alone. *See In re WellPoint*, 865 F.Supp.2d at 1035.

Nor are the allegations concerning the April 19 LPI Notice sufficient to allege a predicate act of mail fraud under Rule 9(b). The Complaint fails to plausibly indicate *how* the April 19 LPI Notice

---

[7] Plaintiff also attaches a June 10, 2021 mortgage statement to his Complaint as Exhibit C. The June 10 mortgage statement relates to Plaintiff's claims against BANA regarding property inspections, not LPI. (*See* Compl. ¶¶ 139, 140.) The charging allegations of the RICO claim do not reference this June mortgage statement – or any mortgage statement – as communications relevant to the RICO "scheme." Plaintiff also does not identify any specific statement in the June 10 mortgage statement that is fraudulent nor contend that Integon had any role in the preparation or transmission of mortgage statements. (*See id.* ¶¶ 221-39 (referencing "letters" and "insurance notices").)

is false or misleading. The Complaint claims that the April 19 LPI Notice is misleading by informing Plaintiff that "force-placed insurance would be 'significantly more expensive'" without disclosing *why* force-placed insurance would be more expensive. (Compl. ¶ 234.) Plaintiff alleges no facts as to how this alleged omission is material – especially in light of the LPI Notice's disclosure that LPI "may not provide as much coverage as hazard insurance you can buy yourself," (Dkt. # 1-1 (Ex. B) at p. 15), and Defendants' disclosures that "BANA may earn commissions or compensation as a result of the forced placement of new coverage," (Compl. ¶ 119). *See, e.g.*, *Gustafson*, 2021 WL 7051318, at *7 ("the Court fails to see how Defendants' failure to inform Plaintiffs and class members that forced-placed insurance practices also generate profits for Defendants is a material omission"). Nor can this alleged omission form the basis of Plaintiff's RICO claim. Plaintiff baldly alleges that "Defendants had a duty to fully disclose the reasons why force-placed insurance would cost significantly more," (Compl. ¶ 234), but Plaintiff does not allege a legal or factual basis for such a duty. "Absent an independent legal duty, such as a fiduciary duty or an explicit statutory duty, failure to disclose cannot be the basis of a RICO fraudulent scheme." *Manos II*, 2018 WL 6220051, at *6 (dismissing civil RICO claim premised on alleged failure to disclose the "true nature" of mortgage servicer's fees) (quoting *Eller v. EquiTrust Life Ins. Co.*, 778 F.3d 1089, 1092 (9th Cir. 2015)).

The Complaint concedes that the April 19 LPI Notice truly discloses that LPI was purchased and that Plaintiff would be charged the premium, which "may be significantly more expensive" and "may not provide as much coverage" as insurance that Plaintiff could buy himself. (Dkt. #1-1 (Ex. B) at pp. 12, 15, 16.) The Complaint does not plausibly identify how this disclosure to Plaintiff is false or misleading.[8]

In short, the Complaint identifies only one communication and fails to indicate what is

---

[8] The Complaint also alleges that Defendants misrepresent that the borrower would be charged "the cost of the insurance," "when in fact such amounts also included kickbacks and other costs paid as bribes to [BANA]." (Compl. ¶ 232.) Accordingly, the gravamen of this alleged misrepresentation is also the failure to disclose that the LPI premiums allegedly included kickbacks. In any event, Plaintiff does not specifically identify the communication containing this alleged misrepresentation. However, Plaintiff's mortgage agreement permits BANA to charge "[a]ny amounts disbursed by the Lender," (Dkt. #1-1 (Ex. A) at p. 5), not the cost of the insurance to BANA, and the April 19 LPI Notice states the borrower will be charged the amount of the premium, (Dkt. #1-1 (Ex. B) at p. 16), not the cost of the insurance to BANA.

materially false or misleading about it. This is insufficient to satisfy Rule 9(b) and adequately allege two predicate acts of mail and wire fraud for each defendant under civil RICO. *See Manos I*, 2017 WL 8236356, at *10 (dismissing RICO claim "predicated on Defendants' alleged 'kickback' scheme in the purchase of LPI" where the "loan expressly authorized the purchase of LPI and the charging of premiums" to the plaintiff, and complaint "lack[ed] the requisite time, place, and specific content of the false representations or omissions").

### iii. Plaintiff Does Not Allege a Plausible Intent to Defraud

Plaintiff generically alleges that Defendants made omissions and misrepresentations in letters and notices to Plaintiff with the intent to deceive Plaintiff into paying inflated amounts for LPI and/or prevent Plaintiff from contesting the charges for LPI. (Compl. ¶¶ 224, 231-237.) According to the Complaint and its attachments, the notices and letters made the following disclosures regarding LPI:

- "[LPI] [m]ay be significantly more expensive than insurance you can buy yourself." (Dkt. #1-1 (Ex. B) at pp. 12, 16.)
- "[LPI] [m]ay not provide as much coverage as an insurance policy you buy yourself." (*Id.*)
- "[BANA] may earn commissions or compensation as a result of the forced placement of new coverage." (Compl. ¶ 119.)
- "Lender-Placed Insurance may be significantly more expensive and may not provide as much coverage as hazard insurance you can buy yourself, and we strongly encourage you not to rely on Lender-Placed Insurance." (Dkt. #1-1 (Ex. B) at p. 15.)

"[L]etters that warn of an imminent bad deal and urge one to seek better," cannot possibly be calculated to deceive anyone. *See Gustafson*, 2012 WL 7051318, at *7 (citation omitted). Indeed, such disclosures are "incompatible with allegations of a scheme intended to deceive." *See Meyer*, 91 F.Supp.3d at 1184-85 (dismissing RICO claim based on "scheme" to pay "kickbacks" to servicer for LPI where disclosures stated that LPI might be more expensive and that servicer might receive compensation); *Gustafson*, 2012 WL 7051318, at *7 (dismissing RICO claim based on failure to disclose the "reasons for high cost of" LPI where disclosures stated that LPI might be more

expensive and that servicer might receive compensation).

Here, Plaintiff's generic allegation that Defendants had an "intent to defraud and deceive," (Compl. ¶ 231), is incompatible with the disclosures in the letters and notices. And, specifically, Plaintiff's claim that Defendants' "common purpose" was to force Plaintiff's to pay for "inflated" LPI to "maximize their revenues" is refuted by Defendants' statement encouraging Plaintiffs "***not to rely on Lender-Placed Insurance***." (Dkt. #1-1 (Ex. B) at p. 15 (emphasis added).) Accordingly, dismissal is appropriate. *See Meyer*, 91 F.Supp.3d at 1184-85; *Gustafson*, 2012 WL 7051318, at *7.

### iv. Plaintiff Cannot Allege Proximate Cause or Cognizable Damages

Plaintiff's Complaint also fails to sufficiently allege causation and damages.

RICO requires Plaintiff to allege that his purported harm "was 'by reason of' the RICO violation, which requires the plaintiff to establish proximate causation." *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008). Here, the Complaint contains no factually supported allegations that Plaintiff suffered harm to his business or property ***as a result of*** paying allegedly "inflated amounts for forced-placed insurance." Any injury to Plaintiff's business or property (such as his payment of the LPI premiums) actually resulted from his failure to maintain the insurance coverage that his mortgage required. Indeed, the April 19 LPI Notice expressly states that LPI would not be placed if Plaintiff provided proof of hazard insurance coverage, and the LPI would be canceled for any period for which Plaintiff provided acceptable evidence of insurance. (Dkt. #1-1 (Ex. B) at p. 16.)

In addition, Plaintiff alleges that if he had known the premiums "included kickbacks and other improper charges" Plaintiff would not have paid the premiums or would have contested them. (Compl. ¶ 237.) However, the mortgage contract allows BANA to impose LPI and requires Plaintiff to pay the premiums. (Dkt. #1-1 (Ex. A) at pp. 4-5.) Accordingly, Plaintiff's theory of damages seems to be that if he had known about the "kickbacks" he would have breached his contractual duty to pay. However, losing an opportunity to breach a contract cannot constitute a cognizable harm. *See Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 614 (7th Cir. 2013) (affirming dismissal of fraud claim

based on alleged failure to disclose "kickbacks" included in LPI charges).[9]

### C. Count V Should Be Dismissed Because Plaintiff Improperly Seeks to Transform His Breach of Contract Claim Against BANA Into a RICO Claim Against Integon

Finally, Plaintiff's substantive RICO claim fails for the independent reason that it is based on the same core facts as his breach of contract claim against BANA. (*Compare* Compl. ¶¶ 231-238 *with id.* ¶ 179.) Plaintiff alleges that BANA breached the mortgage agreement by charging Plaintiff for "unnecessary and excessive" LPI and charging Plaintiff "more than the actual cost of the insurance." (*Id.* ¶ 179.) Under Plaintiff's theory, if BANA charged Plaintiff an excessive amount for LPI, BANA could be deemed to be in breach of the mortgage agreements. "A plaintiff cannot state a claim under the Civil RICO statute 'by simply artfully pleading what is essentially a breach of contract claim.'" *Manos II*, 2018 WL 6220051, at *7. At its core, Plaintiff's fraud theory is that Defendants should have disclosed that BANA was breaching the mortgage agreements by overcharging for LPI premiums. Courts routinely dismiss civil RICO claims where, as here, the claims are just dressed-up attempts to assert a breach of contract. *See id.*; *Vega*, 2015 WL 1383241, at *12 (dismissing RICO claim based on failure to disclose that property inspections were "unnecessary" in alleged breach of the mortgage agreement); *cf. Royce Int'l Broad. Corp. v. Field*, No. C 99-4169 SI, 2000 WL 236434, at *4 (N.D. Cal. Feb. 23, 2000) (dismissing civil RICO claim because the "facts alleged in this contractual dispute are not the types of activities that RICO was intended to eliminate . . . [and a]ny other interpretation would indefinitely expand the reach of the RICO statute by permitting all allegations of 'broken promises' in failed business transactions to constitute 'racketeering activity'"). Plaintiff's attempt to expand the reach of civil RICO liability to a run-of-the-mill breach of contract claim fails as a matter of law.

---

[9] Throughout the Complaint, Plaintiff alleges that the LPI premiums are "unconscionably high," "exorbitant," "inflated" and asserts that his damages are "unreasonably high force-placed insurance premiums." (*See, e.g.*, Compl. ¶¶ 2, 33, 82, 92, 224, 238.) To the extent that Plaintiff claims the LPI premium rates are too high and that forms the basis of his RICO claims, that claim is precluded by the filed-rate doctrine. *See MacKay v. Superior Court*, 188 Cal.App.4th 1427, 1448 (2010) (holding that an insurance rate approved by the Department of Insurance may only be challenged administratively); *Patel v. Specialized Loan Serv. LLC*, 183 F.Supp.3d 1238, 1244 (S.D. Fla. 2016) *aff'd*, 904 F.3d 1314 (11th Cir. 2018) (dismissing all claims premised on allegations that insurer and loan servicer "charged borrowers inflated premiums as a result of kickbacks").

### D. Count VI Must Be Dismissed Because The Complaint Fails to Allege a Violation of RICO to Support the Conspiracy Claim

Count VI asserts a claim for conspiracy to commit a civil RICO violation under 18 U.S.C. § 1962(d). Because Plaintiff fails to state a substantive RICO violation in Count V (as set forth above), Plaintiff's dependent claim for conspiracy to commit a civil RICO violation also fails. Therefore, the Court should dismiss Count VI with prejudice. *Turner v. Cook*, 362 F.3d 1219, 1231 n.17 (9th Cir. 2004) ("Because appellants failed to allege the requisite substantive elements of a RICO claim under 18 U.S.C. § 1962(c), appellants' claim under 18 U.S.C. § 1962(d) . . . also fails.").

## IV. CONCLUSION

For the foregoing reasons, Integon respectfully requests that the Court dismiss Plaintiff's claims against it, in their entirety and with prejudice.

Dated: March 7, 2022

Respectfully submitted,

WINSTON & STRAWN LLP

By: /s/ Margaret E. Dayton
Margaret E. Dayton

*Attorneys for Defendant*
INTEGON NATIONAL INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed on March 7, 2022, with the Clerk of the Court using CM/ECF which caused a copy to be served on all counsel of record.

Dated: March 7, 2022

By: /s/ Margaret E. Dayton
Margaret E. Dayton