Daniel E. Gustafson (*admitted Pro Hac Vice*)
Dennis J. Stewart, CA Bar No. 99152
David A. Goodwin (*admitted Pro Hac Vice*)
**GUSTAFSON GLUEK, PLLC**
600 B Street, Suite 1700
San Diego, CA 92024
Tel.: (612) 333-8844
Fax: (612) 339-6622
dgustafson@gustafsongluek.com
dstewart@gustafsongluek.com
dgoodwin@gustafsongluek.com

Scott D. Hirsch (*admitted Pro Hac Vice*)
**SCOTT HIRSCH LAW GROUP, PLLC**
6810 N. State Road 7
Coconut Creek, FL 33073
Tel.: (561) 569-7062
scott@scotthirschlawgroup.com

Attorneys for Plaintiff and Others Similarly Situated

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN CASTORINA, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> BANK OF AMERICA, N.A., and INTEGON NATIONAL INSURANCE COMPANY, <br><br> Defendants. | Case No.: 2:21-CV-02004-WBS-KJN <br><br> **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT BANK OF AMERICA, N.A.'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date: April 18, 2022 <br> Time: 1:30 p.m. <br> Judge: Hon. William B. Shubb <br> Dept.: Courtroom 5 |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................................. 1

II.   SUMMARY OF THE CASE ........................................................................................... 1

    A.   Plaintiff has Met the Pleading Standards ............................................................ 1

    B.   Plaintiff's FHA Mortgage and HUD Guidelines Prohibit the Charging of Inspection Fees in an Occupied Home and the Limits FPI Charges ................................................ 2

III.   ARGUMENT .................................................................................................................. 4

    A.   Legal Standard .................................................................................................... 4

    B.   Plaintiff's Breach of Contract Claim Should Survive ......................................... 5

    C.   Plaintiff's Implied Covenant Claim is Not Redundant and Should Survive. ........ 7

    D.   Plaintiff's Unjust Enrichment Claim is Viable. ................................................... 8

    E.   Plaintiff Has Sufficiently Pled a RICO Violation. ............................................... 9

        1.   Plaintiff's RICO Claim is Not a Breach of a Contract Claim ................................. 9

        2.   Plaintiff Has Sufficiently Alleged a RICO Violation Under 18 U.S.C. § 1962(c) ........ 9

    F.   Plaintiff has Properly Pled Claims for BOA's Improper Debt Collection Practices .......... 12

        1.   BOA is a Debt Collector ........................................................................................ 12

        2.   BOA's Statements Were Attempts to Collect a Debt .............................................. 13

    G.   Plaintiff has Properly Stated a Claim for BOA's Violations of TILA ................. 14

        1.   BOA's Misrepresentations of the Obligations Between the Parties Violated TILA .... 14

        2.   BOA Violated the TILA by Failing to Provide Plaintiff with New Credit Disclosure .......................................................................................................... 15

    H.   Plaintiff's Consumer Protection Claims are Timely ........................................... 16

    I.   Plaintiff has Properly Stated a Claim Under California's UCL ........................... 17

        1.   Plaintiff has properly pled that both schemes are "unlawful," and violate the UCL ... 17

        2.   Plaintiff has properly pled both schemes are "fraudulent," and violate the UCL ........ 18

        3.   Plaintiff has properly pled that both schemes are "unfair," and violate the UCL ........ 18

IV.   CONCLUSION ............................................................................................................... 19

# TABLE OF AUTHORITIES

Page(s)

Cases

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................... 4

*Beach v. Ocwen Fed. Bank*,
    523 U.S. 410 (1998) ............................................................................................. 14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................... 4

*Boland, Inc. v. Rolf C. Hagen (USA) Corp.*,
    685 F. Supp. 2d 1094 (E.D. Cal. 2010) ................................................................. 5

*Bridge v. Phoenix Bond & Indem. Co.*,
    533 U.S. 639 (2008) ............................................................................................. 11

*Broam v. Bogan*,
    320 F.3d 1023 (9th Cir. 2003) ............................................................................... 4

*Brooks v. ComUnity Lending, Inc.*,
    No. C 07–4501 JF (PVT), 2010 WL 2680265, at *9 (N.D. Cal. Jul. 6, 2010) ....... 2

*Capitol Mortg. Bankers, Inc. v. Cuomo*,
    222 F.3d 151 (4th Cir. 2000) ................................................................................. 2

*City of Los Angeles v. Wells Fargo & Co.*,
    2015 WL 4398858 (C.D. Cal. July 17, 2015) ....................................................... 2

*Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*,
    235 F. Supp. 3d 1132 (E.D. Cal. 2017) ............................................................... 10

*Copart, Inc. v. Sparta Consulting, Inc.*,
    No. 214-CV-00046-KJM-CKD, 2015 WL 3622618 (E.D. Cal. June 9, 2015) ....... 7

*Daly v. United Healthcare Ins. Co.*,
    No. 10-CV-03032-LHK, 2010 WL 4510911 (N.D. Cal. Nov. 1, 2010) .............. 7, 8

*Dykes v. Bank of Am., N.A.*,
    No. 17-cv-62412-WPD, 2018 WL 7822282 (S.D. Fla. July 10, 2018) ............... 8, 9

*Ellis v. J.P. Morgan Chase & Co.*,
   950 F. Supp. 2d 1062 (N.D. Cal. 2013) ............................................... 17

*Ellsworth v. U.S. Bank, N.A.*,
   908 F. Supp. 2d 1063 (N.D. Cal. 2012) ................................................. 7

*Falk v. Gen. Motors Corp.*,
   496 F. Supp. 2d 1088 (N.D. Cal. 2007) ................................................. 2

*Gonzales v. Arrow Financial Services, LLC*,
   660 F.3d 1055 (9th Cir. 2011) ............................................................ 13

*Guerrero v. RJM Acquisitions LLC*,
   499 F.3d 926 (9th Cir. 2007) .............................................................. 12

*Henry v. Ocwen Loan Servicing, LLC*,
   No. 17cv0688 JM(NLS), 2017 WL 3669623 (S.D. Cal. Aug. 23, 2017) ............................ 13

*Hernandez v. Balakian*,
   480 F. Supp. 2d 1198 (E.D. Cal. 2007) ................................................. 9

*Hofstetter v. Chase Home Finance, LLC*,
   751 F. Supp. 2d 1116 (N.D. Cal. 2010) ............................................... 15

*Horton v. California Credit Corp. Retirement Plan*,
   835 F.Supp.2d 879 (S.D. Cal. 2011) ................................................... 12

*Hubbard v. Fidelity Fed. Bank*,
   91 F.3d 75 (9th Cir. 1996) ........................................................... 14, 15

*In re Brumley*,
   570 B.R. 287 (Bankr. W.D. Mich. 2017) ................................................. 3

*In re Intelligent Direct Marketing*,
   518 B.R. 579 (E.D. Cal. 2014) .......................................................... 8

*In re Ruiz*,
   501 B.R. 76 (E.D. Penn Nov. 8, 2013) ................................................ 2, 3

*In re TFT-LCD Antitrust Litig.*,
   586 F. Supp. 2d 1109 (9th Cir. 2005) ................................................... 2

*Jackson v. Carrington Mortg. Servs., LLC*,
   No. 17-60516-CIV, 2017 WL 4347382 (S.D. Fla. Sept. 29, 2017) ...................... 13

*Lane v. Wells Fargo Bank N.A.*,
  No. C 12–04026 WHA, 2013 WL 269133 (N.D. Cal. Jan 24, 2013) ...................... 16

*Lear v. Select Portfolio Servicing, Inc.*,
  309 F. Supp. 3d 1237 (S.D. Fla. 2018) ............................................................. 13

*Leghorn v. Wells Fargo Bank, N.A.*,
  950 F. Supp. 2d 1093 (N.D. Cal. 2013) ............................................................... 7

*Nehemiah Corp. of America v. Jackson*,
  546 F.Supp.2d 830 (E.D. Cal. 2008)................................................................... 2

*Occupational-Urgent Care Health Systems, Inc. v. Sutro & Co., Inc.*,
  711 F. Supp. 1016 (E.D. Cal. 1989)..................................................................... 9

*Pedersen v. Greenpoint Mortg. Funding, Inc.*,
  900 F. Supp. 2d 1071 (E.D. Cal. 2012)............................................................... 11

*Perryman v. Litton Loan Servicing, LP*,
  No. 14-CV-02261-JST, 2014 WL 4954674 (N.D. Cal. Oct. 1, 2014).................... 4

*Pfeifer v. Countrywide Home Loans, Inc.*,
  211 Cal. App. 4th 1250 .................................................................................... 2

*Pinson v. Albertelli Law Partners LLC*,
  618 Fed. Appx. 551 (11th Cir. 2015)................................................................. 13

*Preskar v. U.S.*,
  248 F.R.D. 576 (E.D. Ca. 2008) ......................................................................... 5

*Ramadan v. Chase Manhattan Corp.*,
  156 F.3d 499 (3d Cir.1998)................................................................................ 14

*Riggs-Degraftenreed v. Wells Fargo Home Mortgage, Inc.*,
  No. 4:13–cv–669, 2016 WL 393868 (E.D. Ark. Jan. 29, 2016) ............................ 3

*Roberts v. Fleet Bank, N.A.*,
  342 F.3d 260 (3d Cir. 2003)............................................................................... 14

*Roche v. Bank of Am., Nat. Ass'n*,
  No. 12-CV-2002 W WVG, 2013 WL 3450016 (S.D. Cal. July 9, 2013)............. 5, 6

*Rossman v. Fleet Bank (R.I.) Nat. Ass'n.*,
  280 F.3d 384 (3d Cir. 2002)............................................................................... 14

OPPOSITION TO BANK OF AMERICA'S MOTION TO DISMISS, FILE NO. 2:21-CV-02004-WBS-KJN

*Shroyer v. New Cingular Wireless Servs., Inc.*,
  622 F.3d 1035 (9th Cir. 2010) ................................................................... 5

*Stitt v. Citibank, N.A.*,
  942 F. Supp. 2d 944 (N.D. Cal. 2013) ...................................................... 17

*Tardibuono-Quigley v. HSBC Mortg. Corp. (USA)*,
  15-CV-6940 (KMK), 2017 WL 1194491 (S.D.N.Y. Mar. 30, 2017) ............ 6

*Travis v. Boulevard Bank N.A.*,
  880 F. Supp. 1226 (N.D. Ill. 1995). ......................................................... 15

*Vega v. Ocwen Fin. Corp.*,
  No. 2:14-CV-04408-ODW, 2014 WL 6775898 (C.D. Cal. Dec. 1, 2014) ........... 6

*Vega v. Ocwen Fin. Corp.*,
  No. 2:14-CV-04408-ODW, 2015 WL 1383241 (C.D. Cal. Mar. 24, 2015) .......... 6

*Walker v. Countrywide Home Loans, Inc.*,
  98 Cal. App. 4th 1158 (2002) .......................................................... 6, 9, 18

*Webb v. Bank of Am., N.A.*,
  No. 2:13–cv–02006–MCE–AC, 2013 WL 6839501 (E.D. Cal. Dec. 23, 2013) ......... 12

*Weiner v. Ocwen Fin. Corp.*,
  No. 2:14–cv–02597–MCE–DAD, 2015 WL 4599427 (E.D. Cal. July 29, 2015) ......... 17, 18

*White v. J.P. Morgan Chase, Inc.*,
  167 F. Supp. 3d 1108 (E.D. Cal. 2016) ..................................................... 10

Statutes

12 U.S.C. § 1701t ................................................................................... 2

15 U.S.C. 1692e ................................................................................... 12

15 U.S.C. § 1601(a) ............................................................................. 14

18 U.S.C. § 1961(4) ............................................................................... 9

18 U.S.C. § 1962(c) ........................................................................... 9, 11

Cal. Civ. Code § 1788.2(d) ................................................................... 12

Cal. Civ. Code § 1788.17 ...................................................................... 12

Rules

Fed. R. Civ. P. 9(b) .................................................................................................... 10

Regulations

12 C.F.R. § 226.17(c) ............................................................................................ 14, 15

12 C.F.R. § 226.17(c)(1) ............................................................................................ 14

12 C.F.R. § 226.18 ...................................................................................................... 15

12 C.F.R. § 226.4(d)(2) .............................................................................................. 15

12 C.F.R. § 226.5(c) ................................................................................................... 15

24 C.F.R. § 203.377 ................................................................................................. 2, 3

24 C.F.R. § 203.552(a)(14) .......................................................................................... 3

Other Authorities

HUD Handbook 4330.1 Ch. 9-9(A)(c)(2)(d) ............................................................ 2, 3

Mortgagee Letter 81-26 (HUDML) ............................................................................. 2

## I.   INTRODUCTION

Plaintiff John Castorina ("Plaintiff") asserts claims against Bank of America, N.A. ("BOA") and Integon National Insurance Company ("Integon") (collectively, "Defendants") for improper fees and conduct undertaken by Defendants. Plaintiff's allegations against BOA allege a breach of contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and consumer protection claims. Plaintiff's claims against Integon allege RICO violations. The claims here have already been upheld by Courts in this District. Plaintiff's Complaint specifically details BOA's deceptive actions in charging him for unnecessary property inspections ("Inspections"). Defendants improperly enrich themselves to the detriment of Plaintiff and the Class. BOA also issued unreasonably expensive forced-place insurance ("FPI") on Plaintiff. For the following reasons, this Court should deny BOA's Motion to Dismiss ("MTD").

## II.   SUMMARY OF THE CASE

BOA's MTD claims ignorance of the factual allegations plead and takes liberties with the cases it relies on.  The essence of its motion is that it cannot ascertain the nature of the claims against it and, thus, cannot properly defend against them. However, Plaintiff alleges in detail that BOA formed unlawful enterprises consisting of subsidiaries, affiliated companies, and property preservation vendors and perpetrated a fraudulent scheme to generate hefty profits. Through these unlawful enterprises, BOA forced Plaintiff into default by refusing to accept payment on his account and claiming it could not verify his ownership, had third party vendors conduct unnecessary Inspections, purchased hazard insurance prohibited by the mortgage agreement at marked-up the fees charged by third party vendors for the Inspections and property insurance, and then, without disclosing the mark-ups, assessed borrowers' accounts for these hidden profits and kickbacks.

### A.   Plaintiff has Met the Pleading Standards

BOA argues that Plaintiff's allegations fall short of the Rule 9(b) particularity standards. (*See* BOA's MTD at 4). Its argument ignores the fact that, "[c]learly, a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim. . . . [Accordingly,] a fraud by omission claim can succeed without

the same level of specificity required by a normal fraud claim." *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007). As a result, courts have held that "it is generally inappropriate to resolve the fact-intensive allegations of fraudulent concealment at the motion to dismiss stage." *In re TFT-LCD Antitrust Litig.*, 586 F. Supp. 2d 1109, 1120 (9th Cir. 2005). Rule 9(b) requires only that the allegations be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Brooks v. ComUnity Lending, Inc.*, No. C 07–4501 JF (PVT), 2010 WL 2680265, at *9 (N.D. Cal. Jul. 6, 2010). Plaintiff's Complaint provides ample notice of the claims and allow BOA to prepare an answer.

## B.   Plaintiff's FHA Mortgage and HUD Guidelines Prohibit the Charging of Inspection Fees in an Occupied Home and the Limits FPI Charges

Where HUD[1] rules or regulations are incorporated into an insured mortgage, as here, they are binding upon both parties. *In re Ruiz,* 501 B.R. 76, 79 (E.D. Penn Nov. 8, 2013). Moreover, where an FHA insured loan is being serviced, servicers are required to follow all regulations mandated by the Secretary of HUD. *Pfeifer v. Countrywide Home Loans, Inc.*, 211 Cal. App. 4th 1250, 1266, (Cal. Ct. App. 2012 HUD regulation 24 C.F.R. § 203.377, which provides:

> The mortgagee, upon learning that a property subject to a mortgage insured under this part is vacant or abandoned, shall be responsible for the inspection of such property at least monthly, if the loan thereon is in default. When a mortgage is in default and a payment thereon is not received within 45 days of the due date, **and efforts to reach the mortgagor by telephone within that period have been unsuccessful**, the mortgagee shall be responsible for a visual inspection of the security property to determine whether the property is vacant . . . (emphasis added).

---

[1] The FHA was created by the National Housing Act and is a part of HUD. *Nehemiah Corp. of America v. Jackson*, 546 F.Supp.2d 830, 834 (E.D. Cal. 2008). The FHA operates to insure private lenders against loss on home mortgage loans, thereby making loans more widely available to a greater portion of the population. *Capitol Mortg. Bankers, Inc. v. Cuomo*, 222 F.3d 151, 152 (4th Cir. 2000); *City of Los Angeles v. Wells Fargo & Co.*, No. 2:13–cv–09007–ODW(RZx), 2015 WL 4398858, at *11 (C.D. Cal. July 17, 2015), aff'd, 691 F. App'x 453 (9th Cir. 2017). The availability of mortgages, in turn, promotes Congress's "national goal" of "a decent home and suitable living environment for every American family." 12 U.S.C. § 1701t.

This has consistently been interpreted to mean that once a property has been found to be occupied, no further inspections are required by HUD or authorized for reimbursement. *See*, *In re Ruiz*, 501 B.R. at 81; HUD Handbook 4330.1 Ch. 9-9(A)(c)(2)(d); Mortgagee Letter 81-26 (HUDML)

In *Ruiz*, during a bankruptcy proceeding, the mortgage holder challenged the lender's ability to assess fees for Inspections. The lender claimed that the fees were permitted based upon the mortgage language, which provided that the "lender may inspect the Property if the Property is vacant or abandoned or the loan is in default." However, the FHA insured mortgage contained the following provision: "[The] lender may collect fees and charges authorized by the Secretary [of HUD]." Based upon this provision, the court found that the HUD regulations regarding Inspections were made part of the mortgage contract and therefore controlling. *In re Ruiz*, 501 B.R. at 81. Citing to HUD regulation 24 C.F.R. § 203.377. The court held that the lender was not permitted to charge for Inspections after the mortgagor defaulted because the mortgagor still occupied the property. *Id*.

Here, Plaintiff's mortgage is identical to the mortgage at issue in *Ruiz*, both being a standard FHA agreement, and containing the same provisions. (*See* Compl. Ex. A ¶ 8). Based on this language, the HUD regulations regarding Inspections are incorporated into the mortgage and are binding on both parties. Moreover, the *Ruiz* court held that under § 203.377, a lender cannot collect for Inspection fees conducted while the mortgagor is in default unless the lender can prove the property was vacant or an attempt was made to ascertain vacancy. *Ruiz* 501 B.R. at 81.[2]

Plaintiff's occupancy of the property throughout the delinquency and default and BOA's knowledge of his occupancy precludes BOA from assessing fees for its Inspections. *See* 24 C.F.R. § 203.377; *In re Ruiz*, 501 B.R. at 81; HUD Handbook 4330.1 Ch. 9-9(A)(c)(2)(d).

Notwithstanding the plain language of paragraph 8 of the Mortgage and HUD regulation, BOA argues that other paragraphs authorize the fees at issue. BOA relies on cases which found that the mortgage agreements authorized recovery of reasonable costs for Inspections. *See* MTD at 1. Fatal to

---

[2] This reading of § 203.377 has been subsequently affirmed by other courts . *See In re Brumley*, 570 B.R. 287, 290 n.3 (W.D. Mich. 2017) (holding that fees for inspections of occupied property are prohibited by § 203.377 and not reasonable under 24 C.F.R. § 203.552(a)(14)); *Riggs-Degraftenreed v. Wells Fargo Home Mortgage, Inc.*, No. 4:13–cv–669, 2016 WL 393868, at *4 (E.D. Ark. Jan. 29, 2016) (holding that recovery for inspection fees only allowed if attempts to reach mortgagor by telephone have failed).

BOA's position, none of those cases involved FHA mortgages - each addressed conventional mortgages where the HUD regulations were not an issue because they were not part of the respective mortgages.

The cases BOA relies on for its right to FPI and take fare no better. Each case delt with facts distinct from this matter. Plus, Plaintiff is not contesting BOA's right to FPI. (Compl. ¶ 130). However, Plaintiff does contest BOA's right to manipulate the insurance market for its own financial gains, charging Plaintiff for unauthorized excessive insurance, fees, and commissions for work not performed, and at unreasonably inflated pricing.  (Compl. ¶¶ 130, 145).

As for its arguments that is has unlimited authority to charge Inspection fees, BOA's interpretation of the mortgage fares no better. None of the paragraphs of the Mortgage BOA references authorize it to  collect fees for inspecting properties that are occupied. Those details are left to paragraph 8 and HUD regulation 203.377.

Moreover, nothing in paragraph 4 allows BOA the unrestricted ability to charge whatever it chooses for the costs of insurance to protect its interest. Nor does it allow for the manipulating of exorbitant commissions and fees to its benefit without disclosure. As one court reasoned, "[i]f the deed of trust were interpreted to provide lenders with limitless discretion to set any amount as the 'cost' of insurance, through any means, the contract would be unconscionable." *Perryman v. Litton Loan Servicing, LP*, No. 14-CV-02261-JST, 2014 WL 4954674, at *12 (N.D. Cal. Oct. 1, 2014).

Finally, Paragraph 7 provides that in the event of a failure to make these payments, the "Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2." (Compl. Ex. A, ¶ 7). Inspection fees, nor charging excessive costs for FPI, are not mentioned there.

## III.   ARGUMENT

### A.   Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged." *Id*. Motions to dismiss under Rule 12(b)(6) are generally disfavored in this Circuit and rarely granted. *E.g.*, *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).

On a 12(b)(6) motion, a court must construe the complaint in the light most favorable to the plaintiff and "accept as true all material allegations in the complaint, as well as any reasonable inferences to be drawn from them," *Broam*, 320 F.3d at 1028, and it must "resolve all doubts in plaintiff's favor." *Preskar v. U.S.*, 248 F.R.D. 576, 583 (E.D. Ca. 2008). Dismissal for failure to state a claim is proper "only where there is no cognizable legal theory" or there is "an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). BOA's challenges do not provide a basis to dismiss Plaintiff's Complaint and the Motion to Dismiss must be denied.

## B.   Plaintiff's Breach of Contract Claim Should Survive

"Under California law, a claim for breach of contract includes four elements: that a contract exists between the parties; that the plaintiff performed his contractual duties or was excused from nonperformance; that the defendant breached those contractual duties; and that plaintiff's damages were a result of the breach." *Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F. Supp. 2d 1094, 1101 (E.D. Cal. 2010). Plaintiff has satisfied these four elements.

Foremost, BOA does not contest the existence of the contract. MTD at 5. Plaintiff performed his duties or was excused from nonperformance by repeatedly attempting to pay his mortgage. Compl. at ¶¶135-6. Plaintiff established that BOA breached its duties by refusing to accept payment from Plaintiff and then triggering unneeded Inspections because of its constructive default of Plaintiff, despite Plaintiff's repeated attempts to demonstrate ownership of the property and BOA's unwillingness to accept Plaintiff's mortgage payments. Compl. at ¶¶135-40. Plaintiff did indeed pay for these inspections and was therefore damaged. Compl. at ¶¶139-40.

**Property Inspections**. BOA notes that Plaintiff's mortgage allows BOA to "do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property." Compl., Ex. A ¶¶ 4-5. Here, no Inspections were necessary because the property in question was continually occupied by Plaintiff. *See* Compl. at ¶47. Inspections are not *per se* impermissible, the issue is whether the Inspection

fees here were reasonable. They were not. Imposing these unauthorized fees breached the mortgage contract.

In *Roche v. Bank of Am., Nat. Ass'n*, the court denied BOA's motion to dismiss the plaintiff's complaint alleging a range of impermissible mortgage fees and conduct by BOA. *Roche v. Bank of Am., Nat. Ass'n*, No. 12-CV-2002 W WVG, 2013 WL 3450016 (S.D. Cal. July 9, 2013). The *Roche* court denied BOA's motion to dismiss even though the loan "explicitly authorizes BANA to create and fund an escrow account subsequent to a borrower's failure to pay insurance or taxes." *Id.* at *4. The court denied BOA's motion to dismiss in part because there, as here, the plaintiff alleged breaches by BOA beyond those set forth in the loan. *Id.*

BOA's reliance on *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1164 (2002) is misplaced. *Walker* affirmed the dismissal of a case regarding Inspection fees under the California unfair business competition statute section 17200. Plaintiff does not allege such a claim here.[3] Further, "the reasonableness of the property-inspection fees is a factual question that cannot be decided at the motion-to-dismiss stage." *Vega v. Ocwen Fin. Corp.*, No. 2:14-CV-04408-ODW, 2014 WL 6775898, at *5 (C.D. Cal. Dec. 1, 2014), order withdrawn (Feb. 25, 2015), on reconsideration, No. 2:14-CV-04408-ODW, 2015 WL 1383241 (C.D. Cal. Mar. 24, 2015).[4]

Other courts have noted the inapplicability of *Walker* to breach of contract claims:

> The Court strains to see the applicability of *Walker* to Plaintiff's breach of contract claim. First, in *Walker*, the plaintiffs did not assert a breach of contract claim; they asserted violations of various California statutes. Second, and more importantly, nowhere did the court hold that the defendant's practice of conducting home inspections at regular intervals complied with the contract at issue. The court held that the defendant's practice was not unfair, not that it complied with the governing contract. The court noted simply that "[i]nspecting property after a default is an action that reasonably may be necessary to protect a lender's security interest." Here, Plaintiff alleges that no such necessity existed for every inspection.

---

[3] Further, and perhaps most importantly, *Walker* was a summary judgment decision, while this matter is only at the motion to dismiss stage. Plaintiff has not enjoyed the benefit of conducting any discovery.

[4] The *Vega* decision was subsequently reversed on reconsideration because "Vega's Complaint is based on factual allegations not supported by her own mortgage agreement" and Vega's "claims assert unrecognized theories of liability." *Vega v. Ocwen Fin. Corp.*, No. 2:14-CV-04408-ODW, 2015 WL 1383241, at *2 (C.D. Cal. Mar. 24, 2015). Neither of those factors are present here. Nevertheless, the analysis of the initial order remains instructive here.

*Tardibuono-Quigley v. HSBC Mortg. Corp. (USA)*, No. 15-CV-6940 (KMK), 2017 WL 1194491, at *18 (S.D.N.Y. Mar. 30, 2017) (citations omitted). The same holds true here, as Plaintiff continually occupied the property. Plaintiff also made repeated attempts to pay his mortgage and the fees piled on by BOA. BOA knew Plaintiff occupied the Property. Compl. at ¶175. Plaintiff's breach of contract claims regarding the Inspections should proceed.

      **FPI.**   The question is not whether a lender may force place insurance or whether Plaintiff's mortgage allowed BOA to issue such insurance. Rather, the question is whether the fees charged for that insurance were reasonable. When faced with similar facts, other courts have denied motions to dismiss. *See Leghorn v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093, 1117 (N.D. Cal. 2013) (denying dismissal of breach of contract and implied covenant claims based upon unreasonable fees for FPI despite language stating "Lender may do and pay whatever is reasonable or appropriate to protect Lender's interest in the Property."); *See also Ellsworth v. U.S. Bank, N.A.,* 908 F. Supp. 2d 1063, 1085 (N.D. Cal. 2012) (denying dismissal where plaintiff alleged an improper kickback scheme for issuing force placed flood insurance). The same holds true here – Plaintiff has asserted a plausible breach of contract claim and his case should proceed.

      **C.**    **Plaintiff's Implied Covenant Claim is Not Redundant and Should Survive.**

      BOA claims that Plaintiff's implied covenant claim should be dismissed since it is "premised on the same core facts as his breach of contract **claim**[.]" MTD at 9. Several courts have considered whether a breach of the implied covenant of good faith and fair dealing can co-exist. "[I]t is quite possible for a breach of the implied covenant to be based on a different breach than the contract claim." *Copart, Inc. v. Sparta Consulting, Inc.*, No. 214-CV-00046-KJM-CKD, 2015 WL 3622618, at *14 (E.D. Cal. June 9, 2015). Where a "a party can breach the covenant without breaching an express provision of the contract, a plaintiff can presumably claim a breach of the covenant that is based on a different breach than a concurrently alleged contract claim." *Daly v. United Healthcare Ins. Co.*, No. 10-CV-03032-LHK, 2010 WL 4510911, at *4 (N.D. Cal. Nov. 1, 2010).

      Plaintiff's implied covenant claim is based on allegations distinct from his breach of contract claim. In his breach of contract claim, he alleged that BOA violated the express terms of the Agreement

---

OPPOSITION TO BANK OF AMERICA'S MOTION TO DISMISS, FILE NO. 2:21-CV-02004-WBS-KJN

by charging Inspection fees that he was not contractually required to pay, charging inflated Inspection fees due to the portion of the charges retained by BOA, and charging FPI containing excessive fees and kickbacks not authorized by the mortgage. Compl. ¶¶177-179. BOA violated the express terms of the Agreement by insuring the property in a manner that was neither "reasonable" nor "appropriate." *Id*. ¶175. In his implied covenant claim, however, Plaintiff alleged that BOA breached its duty of good faith and fair dealing by using an automated system that did not consider the necessity for the inspections; ordering Inspections more frequently than necessary; imposing charges inapplicable by law or mortgage provisions for Inspections; charging for FPI that was impermissible and/or in violation of the applicable mortgage provisions; exercising its discretion to choose a FPI policy with artificially inflated charges; and assessing inflated and unnecessary insurance policy charges and misrepresenting the reason for the cost or the need of the policies. *Id*. at ¶188. There is sufficient variation in the factual allegations underpinning Plaintiff's breach of contract claim and breach of implied covenant claim for each claim to survive BOA's MTD.

### D.    Plaintiff's Unjust Enrichment Claim is Viable.

Despite BOA's claim to the contrary, Plaintiff's claim for unjust enrichment is not an action in quasi-contract. MTD at 9. In California, "the elements of unjust enrichment are: (1) the receipt of a benefit; and (2) the unjust retention of the benefit at the expense of another." *In re Intelligent Direct Marketing*, 518 B.R. 579, 590 (E.D. Cal. 2014) (internal citation omitted). Here, BOA received benefits from Plaintiff in the form of kickbacks. Defendants entered into an agreement where Integon issued certificates of insurance when a borrower's voluntary policy lapsed and BOA would then charge the borrower inflated fees for FPI. These fees were inflated to cover these kickbacks. Furthermore, the charges for the FPI policies were unconscionably higher and came with no added benefit to the insured. Plaintiff's unjust enrichment claim is based on the concealment of the kickbacks, not a breach of the loan agreement. The fact that a loan agreement between Plaintiff and BOA exists is insignificant. Rather, it is the benefit BOA retained at Plaintiff's expense. Plaintiff has adequately alleged that BOA received a benefit – inflated fees – at the expense of Plaintiff.

**E.      Plaintiff Has Sufficiently Pled a RICO Violation.**

**1.      Plaintiff's RICO Claim is Not a Breach of a Contract Claim**

Plaintiff is not attempting to "trump up his contract-based claims into civil RICO violations[.]" MTD at 9. Plaintiff's fraud allegations do not arise out of BOA's breach of the mortgage terms, but rather from BOA's misrepresentations surrounding their performance of their obligations under the agreement. *See e.g. Dykes v. Bank of Am., N.A.*, No. 17-cv-62412-WPD, 2018 WL 7822282, at *3 (S.D. Fla. July 10, 2018) (holding that allegations of fraud for false statements of fact by parties under contract is distinct from claims about the contract). Plaintiff's breach of contract claim arises from BOA's "excessive and unfair" Inspections, Compl. ¶176, in violation of the mortgage terms, which permitted only "reasonable and appropriate" measures to protect the property. *Id*. ¶171. Alternatively, Plaintiff's RICO claims arise from BOA's misrepresentations and/or concealment of the "excessive and unfair" Inspections, particularly the Inspections that never happened but were still added to the monthly statement. *Id*. ¶51. In his RICO claim, Plaintiff alleges BOA misrepresented and/or concealed the frequency of the Inspections and misrepresented and/or concealed the inflated Inspection fees in monthly statements. *Id*. ¶¶ 228-29; 231. In his breach of contract claim, Plaintiff alleges that BOA acted outside of the mortgage terms. In his RICO claim, Plaintiff alleges that BOA misrepresented and/or concealed that excess to Plaintiff. Plaintiff's complaint about the fraudulent misrepresentations and/or concealment of BOA's Inspections is distinct from his complaints for breach of contract in ordering Inspections that were "neither reasonable nor appropriate." *Id*. ¶175.

**2.      Plaintiff Has Sufficiently Alleged a RICO Violation Under 18 U.S.C. § 1962(c)**

Defendant argues that Plaintiff failed to plead a RICO violation. To state a RICO claim , one must plead: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as "predicate acts") (5) causing injury to plaintiff's "business or property." *Hernandez v. Balakian*, 480 F. Supp. 2d 1198, 1203 (E.D. Cal. 2007) (internal quotation omitted). Contrary to Defendant's argument, Plaintiff properly alleged a RICO enterprise, predicate acts, intent to defraud, and proximate causation. BOA implemented a FPI program whereby, when it does not detect a borrower's insurance, it starts a letter cycle demanding proof of acceptable insurance. If a borrower does not provide such evidence,

---

Defendant forces a borrower to pay for excessive, unnecessary, and unauthorized FPI at exorbitant costs. Plaintiff makes these allegations under claims for wire fraud and mail fraud, both of which are considered 'racketeering activity' under RICO. *Occupational-Urgent Care Health Systems, Inc. v. Sutro & Co., Inc.*, 711 F. Supp. 1016, 1019 (E.D. Cal. 1989).

**Enterprise.**   The RICO statute defines "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). To show an association-in-fact enterprise, plaintiffs must plead three elements: 1) a common purpose; 2) facts showing member participation in the operation or management of the enterprise; and 3) the enterprise had the longevity necessary to accomplish its purpose and that the alleged associates functioned as a continuing unit. *Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1173-74 (E.D. Cal. 2017). A common purpose requires a showing that "the group engaged in enterprise conduct distinct from their own affairs." *Id.* at 1173. The enterprise here associated for the common purpose of increasing Defendants' revenues by requiring Plaintiff to pay inflated amounts for FPI through a scheme that inflated such amounts to cover kickbacks and expenses while concealing the true nature of those charges from Plaintiff. This was ongoing, as the enterprise has functioned for years, consisting of repeated violations of federal mail and wire fraud statutes. Finally, Defendant had the longevity necessary to accomplish this purpose, as they have been charging Plaintiff for years and receive monthly fees and payments. Plaintiff has sufficiently pled a RICO enterprise to allege a viable RICO action.

**Specificity – Rule 9(b).**   Plaintiff satisfies Fed. R. Civ. P. 9(b) pleading requirements in his allegations that Defendant used mail and wires to further the fraudulent scheme. Rule 9(b) requires a plaintiff alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake. Plaintiff[] must articulate the 'who, what, when, where, and how' of the fraud alleged." *White v. J.P. Morgan Chase, Inc.*, 167 F. Supp. 3d 1108, 1114-15 (E.D. Cal. 2016).

Plaintiff sufficiently alleged that when a lack of insurance was detected, BOA started a letter cycle of letters generated demanding that Plaintiff provide proof of acceptable insurance. If Plaintiff did not provide proof, a FPI policy was obtained, and the premium charged to Plaintiff. Compl. ⁋ 112. These letters purportedly came from BOA. *Id.* ⁋ 119, 144. BOA used mail and wire communications to execute

---

OPPOSITION TO BANK OF AMERICA'S MOTION TO DISMISS, FILE NO. 2:21-CV-02004-WBS-KJN

the scheme to defraud, including sending mortgage statements to Plaintiff, receiving and accepting Plaintiff's payments, and sending letters to collect payments. *Id*. ¶¶ 223, 227, 250. Because Plaintiff meets the heightened pleading requirements, his RICO claim should not be dismissed.

**Proximate Cause.** Defendant argues that Plaintiff failed to sufficiently allege that he suffered harm "as a result of paying allegedly wrongful fees." MTD at 13. BOA challenges causation and damages because it asserts there is no support that Plaintiff was harmed "**as a result of** paying allegedly 'inflated amounts for forced-placed insurance.'" MTD at 14 (emphasis in original). To show causation and damages, a "plaintiff must show that the injury was proximately caused by the conduct and that he has suffered a concrete financial loss." *Pedersen v. Greenpoint Mortg. Funding, Inc.*, 900 F. Supp. 2d 1071, 1082 (E.D. Cal. 2012). Proximate cause is a flexible concept and in evaluating a RICO claim for proximate causation, the central question is whether the violation led directly to Plaintiff's injuries. *Bridge v. Phoenix Bond & Indem. Co.*, 533 U.S. 639, 654 (2008) (internal quotation omitted). In establishing proximate causation, a Plaintiff need not show that he relied on the defendant's alleged misrepresentations. *Id*. at 660.

Without legitimate reason, Defendant put Plaintiff's loan account into delinquency and then refused Plaintiff's attempts to make mortgage payments. Compl. ¶¶ 135-36. Additionally, for twenty-two months, Defendant claimed inability to verify his ownership and refused to accept his payments. Therefore, Plaintiff's voluntary hazard insurance policy lapsed, and BOA issued a FPI policy that cost significantly more than what Plaintiff paid for his voluntarily purchased policy. Plaintiff suffered a monetary loss resulting from these fees. Defendant's charging of unnecessary and illegal fees led directly to Plaintiff's monetary injuries. Plaintiff has sufficiently pled proximate cause to allege a viable RICO action.

**Conspiracy.** BOA contends Plaintiff's alleged "failure to state a substantive RICO violation also dooms his dependent claim for conspiracy to commit a civil RICO violation." MTD at 13. As outlined above, Plaintiff has properly alleged a substantive RICO violation. Furthermore, 18 U.S.C. 1962(c) and (d) prohibit "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of

unlawful debt" and "any person to conspire to violate any of the provisions" outlined in subsections (a), (b), or (c) of 1962. Plaintiff has sufficiently pled that BOA was aware of the nature and scope and agreed to participate in the enterprise. Compl. ¶ 228-29. Plaintiff alleges BOA "unfairly profited from the forced placement of insurance on borrowers" because it "earns additional interest on the amounts charged, and causes borrowers to incur additional costs and fees." Compl. ¶¶ 106, 110. Plaintiff has adequately alleged a RICO violation and a conspiracy to commit a RICO violation.

### F.  Plaintiff has Properly Pled Claims for BOA's Improper Debt Collection Practices

#### 1.  BOA is a Debt Collector

BOA's claim that it is not a "debt collector" and thus is not subject to claims for violations of the Rosenthal Act is without legal merit. Under the Rosenthal Act ("RFDCPA"), debt collectors are prohibited from using false, deceptive, or misleading representations in connection with the collection of a debt. Cal. Civ. Code § 1788.17; 15 U.S.C. 1692e. The RFDCPA defines a "debt collector" as "any person who, 'in the ordinary course of business,' collects a debt on behalf of himself or herself or other." *Horton v. California Credit Corp. Retirement Plan*, 835 F.Supp.2d 879, 890 (S.D. Cal. 2011). A debt is "money, property or their equivalent which is due or owing or alleged to be due or owing from a natural person to another person." Cal. Civ. Code § 1788.2(d).

The purpose of the RFDCPA is "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts." *Webb v. Bank of Am., N.A.*, No. 2:13–cv–02006–MCE–AC, 2013 WL 6839501, at *5 (E.D. Cal. Dec. 23, 2013). The RFDCPA's standard of "deception" is low: whether the "least sophisticated debtor" would be deceived by the communication in question. *See Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007).

BOA's schemes violate  the FDCPA by assessing "charges" that are not "expressly authorized by the agreement creating the debt or permitted by law." The Inspection fee scheme involved inspections that were so cursory and unnecessary, and fees that were so inflated, that they were not authorized by the "reasonable" language in Plaintiff's mortgage. *See* Compl. ¶¶ 133, 137-141. Moreover, the inspections were also not authorized by the mortgage or HUD regulations, as Plaintiff occupied the home and BOA was aware of his occupancy. *Id.* ¶¶ 46-47, 138. Similarly, the FPI scheme imposed fees and commissions that were not authorized in his mortgage documents. *Id*. ¶¶ 144-146. Defendants cannot point to any

California law or any contractual text that expressly permits the imposition of the fees in either Scheme. *Id.* ¶¶ 144-146.

### 2.    BOA's Statements Were Attempts to Collect a Debt

BOA's claims that its monthly statements and payoff quote are not an attempt to collect a debt merely because they contain the required TILA mandated language are equally unavailing. The Ninth Circuit applies the "least sophisticated debtor" standard in determining whether a communication is an attempt to collect a debt. *Gonzales v. Arrow Financial Services, LLC*, 660 F.3d 1055, 1061-62 (9th Cir. 2011). "The standard is 'designed to protect consumers of below average sophistication or intelligence,' or those who are 'uninformed or naïve,' particularly when those individuals are targeted by debt collectors.'" *Id.* Thus, the question of whether a communication is an attempt to collect a debt is viewed from the lens of the least sophisticated debtor, not whether the offending party was intending to collect a debt. Courts have held that a letter from a debt collector can have more than one meaning, one that provides information and one that collects a debt. *Pinson v. Albertelli Law Partners LLC*, 618 Fed. Appx. 551, 553 (11th Cir. 2015) ("A communication can have more than one purpose…providing information to a debtor as well [as] collecting a debt.").

The question here is if the least sophisticated consumer could think the mortgage statement and reinstatement statement at issue is an attempt to collect a debt. If the least sophisticated consumer would believe that it is an attempt to collect a debt, then it meets the definition of debt collection under the FDCPA. It is of no moment that the mortgage statement BOA sent contained the requisite TILA items. *See Jackson v. Carrington Mortg. Servs., LLC*, No. 17-60516-CIV, 2017 WL 4347382, at *3 (S.D. Fla. Sept. 29, 2017) ("The fact periodic account statements are required under TILA is not dispositive of whether Defendant's activity is related to debt collection."). The monthly statements attached to BOA's motion includes (1) a Total Amount Due and a payment due date; (2) a payment coupon with instructions on where the Plaintiff can make payment which includes BOA's mailing address and phone number; (3) a Notice stating "**Your Mortgage payments are late**. If you don't bring your loan current it may result in fees and foreclosure (the loss of your home);" (4) a Delinquency Notice that states "**Your loan is in the foreclosure process**;" and (5) a debt collection notice that informs Plaintiff that the mortgage statement from BOA is a communication from a debt collector. *See* Statements (Ex. A-U to BOA's

---

MTD). The language in the Statements is exactly what the Courts consider to be a communication attempting to collect a debt and in violation of the FDCPA. *See Lear v. Select Portfolio Servicing, Inc.*, 309 F. Supp. 3d 1237, 1240 (S.D. Fla. 2018). It has all of the hallmarks that the least sophisticated consumer would believe is an attempt to collect a debt. Therefore, there is a question fact that cannot be resolved on a motion to dismiss.

BOA's argument that the claims are not pled with specificity also fails. A cursory read of the Complaint reveals ample factual allegations. Regardless, all that is needed is for Plaintiff to allege BOA is a debt collector collecting a debt. *Henry v. Ocwen Loan Servicing, LLC*, No. 17cv0688 JM(NLS), 2017 WL 3669623, at *4 (S.D. Cal. Aug. 23, 2017) (rejecting defendants' arguments that plaintiff's RFDCPA claim was not plead with specificity where plaintiff alleged defendant sent monthly statements that allegedly violated the FDCPA, including claiming and reporting an amount greater than allegedly due). Plaintiff's allegations satisfy the pleading standards of the FDCPA and RFDCPA.

### G.   Plaintiff has Properly Stated a Claim for BOA's Violations of TILA

TILA exists is to assure "meaningful disclosure of credit terms" and "protect the consumer against inaccurate and unfair credit billing" practices. 15 U.S.C. § 1601(a). BOA argues it was required to implement FPI, but completely ignores that its own actions caused Plaintiff's insurance to lapse. In refusing to accept payments on Plaintiff's loan, BOA also stopped making the required escrow distribution payments to Plaintiff's insurance company causing the insurance to lapse. BOA conveniently ignores these allegations but cannot escape liability for its bad acts.[5]

#### 1.   BOA's Misrepresentations of the Obligations Between the Parties Violated TILA

The fundamental requirement of the TILA is to provide borrowers with clear and accurate disclosures of loan terms. *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998). Therefore, disclosures made by a lender must accurately reflect the terms of the legal obligation between the parties. 12 C.F.R.

---

[5] TILA is a remedial consumer protection statute that "should be construed liberally in favor of the consumer." *Rossman v. Fleet Bank (R.I.) Nat. Ass'n.*, 280 F.3d 384, 390 (3d Cir. 2002) (quoting *Ramadan v. Chase Manhattan Corp.,* 156 F.3d 499, 502 (3d Cir.1998)).

§ 226.17(c)(1) ("The disclosures shall reflect the terms of the legal obligation between the parties."). TILA's truthfulness requirement prohibits "not only literal falsities, but also misleading statements." *Roberts v. Fleet Bank, N.A.*, 342 F.3d 260, 266 (3d Cir. 2003) (internal quotation marks omitted). That duty to make truthful and accurate disclosures is an ongoing duty and applies to **both** subsequent disclosures and initial disclosures at the time of the transaction. *See Hubbard v. Fidelity Fed. Bank*, 91 F.3d 75, 79 n.7 (9th Cir. 1996) (rejecting the argument that 12 C.F.R. § 226.17(c) "only applies to disclosures before consummation of the transaction"). Thus, where a creditor sends out notices, after the date of the transaction, which misstate the borrower's obligations, such notices give rise to liability under the TILA. *Hubbard*, 91 F.3d at 79.

Here, BOA's purchase of excessive FPI violated the TILA because it misrepresented Plaintiff's hazard insurance obligations under his mortgage agreement and federal law and failed to disclose the amounts and nature of the commissions (which were in essence nothing more than kickbacks), and other fees and profits BOA and Integon received. Compl. ¶¶ 211-213. This "departure from the mortgage documentation" supports Plaintiff's TILA claim. *Hofstetter v. Chase Home Finance, LLC*, 751 F. Supp. 2d 1116, 1125 (N.D. Cal. 2010) ("*Hofstetter II*") ("[A] lender's imposition of mandatory flood insurance coverage in connection with a HELOC, where no such insurance was required at the loan's consummation . . . , must be deemed a 'change of terms'" in violation of TILA).[6]

### 2. BOA Violated the TILA by Failing to Provide Plaintiff with New Credit Disclosure

BOA also violated TILA by failing to supplement its credit disclosures to account for the new FPI coverage. BOA's argument that no supplemental disclosures were required "[b]ecause no new credit was extended" (MTD at 15) misses the point. By demanding and purchasing hazard insurance coverage that was not authorized as part of the original loan transaction, BOA entered into a separate transaction that triggered a new set of disclosures. *See Travis v. Boulevard Bank N.A.*, 880 F. Supp. 1226, 1229-30 (N.D. Ill. 1995) ("Defendant's purchase of the allegedly unauthorized insurance and the subsequent

---

[6] Although *Hofstetter* dealt with an open-ended credit plan, the duty to accurately disclose the terms of the legal obligation between the parties applies to both open-ended and closed-ended credit plans. *Cf.* 12 C.F.R. § 226.5(c) (open-ended credit plans) *with* 12 C.F.R. § 226.17(c) (closed-ended credit). Indeed, the very nature of a closed-end loan is that its terms are **not** subject to change.

addition of the resulting premiums to Plaintiffs' existing indebtedness constituted a new credit transaction" that "required new disclosures" under 12 C.F.R. § 226.18).[7]

BOA's reliance on *Lane v. Wells Fargo Bank N.A.*, No. C 12–04026 WHA, 2013 WL 269133, at * 15 (N.D. Cal. Jan 24, 2013) is unsound. The *Lane* court dismissed a TILA claim alleging Wells Fargo's force placing of insurance in amounts not originally agreed to and the charge for commissions or fees was a new transaction requiring new disclosures. *Id*. However, the contractual provisions of the mortgage agreement the *Lane* court relied in dismissing the claim was vastly different from the contractual provisions here. The operative language in *Lane* specifically informs the borrower that the insurance requirements, including the charges and amounts of the deductibles can change during the loan. The same is not true here. Indeed, there is no such disclosure in Plaintiff's agreement. Furthermore, the operative paragraphs in *Lane* contain additional covenants and disclosures that the lender may force place insurance at the lender's option and determination at the borrower's expense, and the cost might significantly exceed the cost of insurance the borrower could have obtained. No such agreement or disclosures exist in any way in Plaintiff's mortgage agreement. Therefore, BOA has violated TILA by purchasing unauthorized FPI.

### H.  Plaintiff's Consumer Protection Claims are Timely

BOA's argument that Plaintiff's consumer protection claims are time-barred is baseless. *See* MTD at 16. All of Plaintiff's claims are timely and described in detail in the Complaint. BOA misrepresents the allegations concerning when the events took place. For example, BOA states that Plaintiff only alleges that BOA implemented FPI on November 2019. Compl. ¶ 143. However, BOA conveniently ignores Plaintiff's allegations that BOA subsequently renewed and again implemented FPI on Plaintiff on April 19, 2021, well within the one yeas statute of limitations period of Plaintiff's consumer protection claims.

---

[7] It is undisputed that any "finance charges" must be disclosed under the TILA. *See* 12 C.F.R. 226.18(d). Although insurance premiums are not considered "finance charges" if the borrower is free to select the insurance carrier, 12 C.F.R. § 226.4(d)(2), this argument has no application where the insurance premiums charged to the borrower were not authorized as part of the underlying loan transaction. *See Hofstetter I*, 751 F. Supp. 2d at 1128 (unauthorized "property insurance coverage written in connection with a loan triggers mandatory 'finance charge' disclosures").

Compl. ¶ 144. Moreover, because Plaintiff's TILA claim arises from these actions (subsequent to the initial loan disclosures), it easily falls within the one-year limitations period.

BOA also distorts Plaintiff's allegations about Inspection fees. BOA argues that Plaintiff only alleged "a property inspection fee on 2019, *id* ¶ 137." However, Plaintiff's allegations in ¶ 137 actually state that "[a] transaction summary of the charges placed against Plaintiff's loan reveal BOA began charging for property inspections was on July 24, 2019." BOA conducted approximately 15 unauthorized Inspections, several of which were charged to Plaintiff on June 10, 2021. Compl. ¶¶139, 140, Ex C. These charges and allegations all occurred within the statutes of limitations period of Plaintiff's consumer protection claims. Plaintiff filed the instant action on October 29, 2021 well within the limitations period of all of Plaintiff's claims. For the aforementioned reasons, BOA's arguments are without merit and should be denied.

I.       **Plaintiff has Properly Stated a Claim Under California's UCL**

1.       **Plaintiff has properly pled that both schemes are "unlawful," and violate the UCL**

Plaintiff has properly pled that both schemes violate California statutes, including the RFDCPA, and California common law claims of unjust enrichment. *See* Compl. ¶¶ 283, 285. These violations are predicates for Plaintiff's UCL "unlawful" claim. Plaintiff has alleged that through its Schemes, BOA unjustly retained the fees and FPI fees at Plaintiff's expense. *See* Compl. ¶¶ 278, 284-288. *See, e.g.*, *Weiner v. Ocwen Fin. Corp.*, No. 2:14–cv–02597–MCE–DAD, 2015 WL 4599427, at *1 (E.D. Cal. July 29, 2015) (denying motion to dismiss claim alleging practices including "improperly assess[ing] marked-up fees for default related services on [] mortgage accounts").[8]

---

[8] *See also Ellis v. J.P. Morgan Chase & Co.*, 950 F. Supp. 2d 1062, 1084, 1093 (N.D. Cal. 2013) (denying motion to dismiss claim alleging that a mortgage servicer "assessed fees for default-related services, including . . . inspection fees" that were "automatically" charged and "inflated"); *Stitt v. Citibank, N.A.*, 942 F. Supp. 2d 944, 949 (N.D. Cal. 2013) (denying motion to dismiss claim alleging that a mortgage servicer "assessed fees for default-related services, including property inspections" that were "automatically ordered regardless of whether the inspections were necessary" and "marked-up").

---

2.      **Plaintiff has properly pled both schemes are "fraudulent," and violate the UCL**

"A plaintiff must plead allegations of fraud and those that 'sound in fraud' with particularity," and thus "must plead the 'who, what, when, where, and how' of the alleged fraud." *Weiner*, 2015 WL 4599427, at *4. Here, Plaintiff alleges the "who" is BOA in the inspection fee scheme and BOA and Integon in the FPI scheme. *See* Compl. ¶¶ 61-79, 111-130. The "what" are schemes to increase the debt of delinquent borrowers. *See Id.* The "how" of the inspection fee scheme is acting contrary to Plaintiff's deed of trust, which requires BOA to only charge inspection fees that are "reasonable" and in accordance with HUD guidelines. *See Id.*, Ex. A. The "how" of the FPI scheme is BOA's causing of Plaintiff's insurance to lapse so it could implement higher priced FPI through its affiliate Integon and charge Plaintiff excessive fees and commissions. *See Id.* ¶¶ 143-146. The "when" is September 1, 2019 the period between and June 30, 2021. *See Id.* ¶¶ 134-146. The "where" is where BOA operates and executes BOA's automated loan servicing system, and Plaintiff's home in California. *See Id.* ¶¶ 7, 68, 144-145.

3.      **Plaintiff has properly pled that both schemes are "unfair," and violate the UCL**

Plaintiff has pleaded a violation of the UCL's "unfair" prong. BOA's schemes produced "substantial" consumer injury, not outweighed by any benefits to consumers or competition and could not reasonably have been avoided. *See* Compl. ¶ 287. BOA's reliance on *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158 (2002) is misplaced and is not controlling here. *Walker* fails to support BOA's argument that the Inspection Fee Scheme is "fair," because *Walker* addressed fees assessed *during* delinquency and in a manner *authorized by contract*. *Walker*, 98 Cal. App. 4th at 1166 (2002). Here, the Inspection fees were unauthorized, inflated, and for inspections that did not occur or were unnecessary and duplicative. As the *Weiner* Court noted "*Walker*'s recognition that a loan servicer can charge a delinquent borrower an Inspection fee [generally] does not mean that Defendants can charge marked-up default-related service fees, an issue not addressed in *Walker.*" *Weiner*, 2015 WL 4599427, at *12.

## IV.    CONCLUSION

Plaintiff respectfully requests that the Court deny Defendant Bank of America's Motion in its entirety.

Dated:          March 21, 2022                    Respectfully submitted,


                                                  **GUSTAFSON GLUEK, PLLC**


                                                  By:    */s/ Dennis J. Stewart*
                                                  Dennis J. Stewart, #99152
                                                  600 B Street, Suite 1700
                                                  San Diego, CA 92024
                                                  Tel.: (612) 333-8844
                                                  Fax: (612) 339-6622
                                                  dstewart@gustafsongluek.com

OPPOSITION TO BANK OF AMERICA'S MOTION TO DISMISS, FILE NO. 2:21-CV-02004-WBS-KJN

## __CERTIFICATE OF SERVICE__

The undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed on March 21, 2022, with the Clerk of Court using CM/ECF which caused a copy to be served on all counsel of record.

Dated:  March 21, 2022                         By:      */s/ Dennis J. Stewart*
                                                        Dennis J. Stewart