1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                         ----oo0oo----

11

12   JOHN CASTORINA, individually and      No. 2:21-cv-02004 WBS KJN
     on behalf of all others
13   similarly situated,

14              Plaintiff,
                                           MEMORANDUM AND ORDER RE:
15        v.                               DEFENDANTS' MOTIONS TO
                                           DISMISS
16   BANK OF AMERICA, N.A., and
     INTEGON NATIONAL INSURANCE
17   COMPANY,

18              Defendants.

19

20                         ----oo0oo----

21          Plaintiff John Castorina ("plaintiff") has filed this

22   putative class action against Defendant Bank of America, N.A.

23   ("Bank of America") and Integon National Insurance Company

24   ("Integon") alleging various violations of federal and California

25   state laws relating to defendants' practices surrounding the

26   purchasing and placing of insurance, and the conducting of

27   inspections, on borrowers' properties.  (Compl. (Docket No. 1).)

28   Bank of America and Integon now move to dismiss plaintiff's

                                   1

1  complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

2  (Docket Nos. 15, 20.)

3  I.    Factual and Procedural Background

4          Plaintiff purchased the property at issue at 2110

5  Forestlake Drive, Rancho Cordova, California 95670 ("the

6  property") in 1995.  (Compl. ¶ 7, 131.)  After a series of

7  transactions and transfers, on or about April 25, 2003, plaintiff

8  entered into a "mortgage" agreement on the property with

9  Countrywide Home Loans.[1]  (Id.)  In 2008, Bank of America

10  purchased the mortgage and became the mortgage lender and

11  servicer.  (Id.)

12          The deed of trust at issue contained a provision that

13  required plaintiff to secure and pay for adequate property

14  insurance that protected the property against loss due to

15  hazards.  (Id. ¶ 132; Id., Ex. A., Deed of Trust ("Deed of

16  Trust") ¶ 4 (Docket No. 1-1).)  It also contained a provision

17  allowing Bank of America to inspect and safeguard the property if

18  it is "vacant or abandoned or the loan is in default."  (Compl. ¶

19  133; Deed of Trust ¶ 5.)

20          Plaintiff alleges that in 2019 he applied for a loan

21  modification and received correspondence from Bank of America

22  denying his application because of its inability to confirm

23  plaintiff actually owned the property. (Compl. ¶ 134.)  Plaintiff

24  responded to the denial with a copy of his deed to confirm

25

26          [1]    In their pleadings, the parties refer to the deed of
   trust and promissory note collectively as the "mortgage,"
27  "mortgage agreement" or "agreement."  The contractual terms which
   are at issue in this case are those set forth in the deed of
28  trust.

1  ownership.  (Id.)  At that time, Bank of America began refusing

2  to accept monthly payments on the loan.  (Id.)

3       On or about September 1, 2019, Bank of America put

4  plaintiff's loan account into delinquency.  (Id. ¶ 135.)

5  Plaintiff alleges he provided the requested documentation and

6  obtained assistance of counsel to prove ownership over the

7  property.  (Id. ¶¶ 135, 138.)  Bank of America nevertheless

8  continued to refuse to accept payments or acknowledge plaintiff's

9  ownership of the property for twenty-two months.  (Id. ¶¶ 136,

10  142.)

11       Plaintiff alleges that on July 24, 2019, Bank of

12  America began charging his account for property inspections.

13  (Id. ¶ 137.)  He alleges Bank of America conducted fifteen

14  property inspections, some of which were to check if the property

15  was vacant, though plaintiff alleges Bank of America knew he was

16  occupying it.  (Id. ¶ 139.)  Seven of those inspections were

17  charged to plaintiff's account on the same day, June 10, 2021,

18  after plaintiff had made multiple payments to bring his account

19  out of default.  (Id.; Compl., Ex. C, June 10, 2021 Account

20  Statement ("June 10, 2021 Account Statement") (Docket No. 1-1).)

21       In or around November 2019, plaintiff's voluntary

22  hazard insurance policy lapsed, and Bank of America then

23  purchased a hazard insurance policy through Integon, and placed

24  it onto plaintiff's property.  (Id. ¶ 143.)[2]  The lender-placed

25  insurance remains on plaintiff's property and plaintiff has paid

26

27       [2]  An insurance policy that is placed on borrowers'
properties in this manner is referred to by the parties both as
"force-placed insurance" and "lender-placed insurance."  The
28  court will refer to it as "lender-placed insurance."

3

the amounts for the lender-placed insurance charges to Bank of America. (Id.)  Plaintiff alleges that charges for the lender-placed insurance made to plaintiff were higher than the cost of the lender-placed insurance that Bank of America paid to Integon. (Id. ¶ 145.)  Plaintiff also alleges that the cost of the lender-placed insurance is twelve times more expensive than his prior voluntary policy due to a "kickback scheme" between the defendants.  (Id.)

Plaintiff alleges the "kickback scheme" between defendants works as follows: Integon monitors Bank of America's loan portfolio, and once a lapse in insurance coverage is identified, a notice, purporting to come from Bank of America, is sent to the borrower regarding lender-placed insurance.  (Id. ¶ 114.)  Bank of America pays Integon for the certificate for insurance, which issues from an already existing master policy that Bank of America has with Integon.  (Id. ¶ 116.)  Bank of America charges the borrower the full amount it initially pays Integon for the insurance.  (Id. ¶ 120.)

However, once coverage begins, Bank of America receives a set percentage back of its initial payment to Integon "disguised as 'commissions,' 'reinsurance payments,' or 'expense reimbursements,'" which lowers the cost of coverage that Bank of America pays to Integon.  (Id. ¶ 117.)  Bank of America does not pass on these "kickbacks" to borrowers.  Plaintiff alleges that Integon performs the insurance monitoring services on Bank of America's loans to maintain the exclusive right to place insurance on Bank of America's borrowers. (Id. ¶ 122.)

On October 21, 2021, plaintiff initiated this action by

4

1   filing a proposed class action complaint alleging nine claims:

2   (1) breach of contract; (2) breach of the implied covenant of

3   good faith and fair dealing; (3) violations of the Fair Debt

4   Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692; (4)

5   violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §

6   1601; (5) violations of the Racketeer Influenced and Corrupt

7   Organizations Act ("RICO"), 18 U.S.C. § 1962(c); (6) conspiracy

8   under RICO, 18 U.S.C. § 1962(d); (7) violations of the Rosenthal

9   Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ.

10  Code § 1788; (8) unjust enrichment; and (9) violations of

11  California Unfair Competition Law, Cal. Bus. & Pro. Code § 17200.

12  Plaintiff alleges all nine claims against Bank of America, and

13  only the two RICO claims against Integon.

14  II.  Discussion

15       Federal Rule 12(b)(6) allows for dismissal when the

16  plaintiff's complaint fails "to state a claim upon which relief

17  can be granted."  Fed. R. Civ. Pro. 12(b)(6).  The inquiry before

18  the court is whether, accepting the allegations in the complaint

19  as true and drawing all reasonable inferences in the plaintiff's

20  favor, the plaintiff has stated a claim to relief that is

21  plausible on its face.  See Ashcroft v. Iqbal, 556 U.S. 662, 678

22  (2009).  "The plausibility standard is not akin to a 'probability

23  requirement,' but it asks for more than a sheer possibility that

24  a defendant has acted unlawfully."  Id.  "Threadbare recitals of

25  the elements of a cause of action, supported by mere conclusory

26  statements, do not suffice."  Id.

27       A.   Breach of Contract

28            To state a breach of contract claim under California

5

1   law, plaintiffs must allege (1) the existence of a contract; (2)

2   plaintiff's performance or excuse for nonperformance of the

3   contract; (3) defendant's breach of the contract; and (4)

4   resulting damages.  First Com. Mortg. Co. v. Reece, 89 Cal. App.

5   4th 731, 745 (2d Dist. 2001).  Plaintiff alleges Bank of America

6   breached the terms of the deed of trust by charging plaintiff for

7   "excessive and unfair property inspections," charging plaintiff

8   for lender-placed insurance that was "unnecessary and excessive,"

9   and not passing on the kickbacks on the cost of coverage.

10  (Compl. ¶¶ 175-79.)

11      Bank of America argues that plaintiff has failed to

12  allege a breach because the deed of trust allows it to conduct

13  property inspections and charge plaintiff related fees.  (Bank of

14  America's Mot. ("BOA Mot.") at 5.)  The deed of trust states that

15  Bank of America "may do and pay whatever is necessary to protect

16  the value of the [p]roperty and [its] rights in the [p]roperty"

17  if plaintiff fails to perform under the agreement or there is a

18  legal proceeding.  (Deed of Trust ¶ 7.)  Specifically, Bank of

19  America may inspect the property if it is "vacant or abandoned or

20  the loan is in default."  (Id. ¶ 5.)

21      Plaintiff does not dispute that these provisions are in

22  the deed of trust.  However, plaintiff alleges that he was

23  charged for inspections that were "drive-by or fabricated."

24  (Compl. ¶ 174.)  The deed of trust does not allow Bank of America

25  to charge for inspections that never actually happened.

26  Plaintiff also alleges that the inspections occurred when

27  plaintiff was occupying the property and that Bank of America

28  knew he was occupying it.  (Id. ¶ 175.)  The parties also

6

1   disagree on whether plaintiff was in default when the inspections
2   began.  At the pleading stage, the court cannot decide whether
3   plaintiff actually was in default in order to determine if his
4   claim may proceed.  Therefore, based on these factual
5   allegations, plaintiff states a breach of contract claim that is
6   "plausible on its face" as Bank of America was allegedly
7   conducting property inspections even when the property was not
8   "vacant or abandoned or the loan [was not] in default."  <u>See</u>
9   <u>Ashcroft</u>, 556 U.S. at 678; (Deed of Trust ¶ 5.)

10          Plaintiff's allegations regarding the frequency of the
11  property inspections also sufficiently state a claim for breach
12  of contract.  Plaintiff pleads inspections were occurring "in
13  excess of once every 30 days."  (Compl. ¶ 174.)  Bank of America
14  contends that fifteen property inspections in a 22-month period
15  is not excessive given that courts analyzing similar claims have
16  held inspections once a month were allowed.  (BOA Mot. at 5-6
17  (citing <u>Walker v. Countrywide Home Loans, Inc.</u>, 98 Cal. App. 4th
18  1158 (2d Dist. 2002) (holding that charging the borrower for 12
19  inspections that happened approximately every 30 days was not in
20  violation of the California Unfair Competition Law).)  However,
21  plaintiff was charged for seven inspections on a single day,
22  which raises an inference that the inspections were excessive or
23  fabricated, and not done per the contract as "is necessary to
24  protect the value of the property" or Bank of America's rights in
25  it.  (June 10, 2021 Account Statement; Deed of Trust ¶ 7.)

26          In regard to the lender-placed insurance, the agreement
27  states that any amounts "disbursed by" Bank of America for the
28  lender-placed insurance will "become an additional debt of the

borrower." (Deed of Trust ¶ 7.) Here, plaintiff alleges that Bank of America did not actually pay the amount it charged plaintiff for lender-placed insurance, and therefore, the amount "disbursed by" Bank of America is less than what "becomes an additional debt" for plaintiff. (See id.) Therefore, plaintiff sufficiently alleges that he was charged beyond what the deed of trust permits.

Bank of America notes that it disclosed to plaintiff that lender-placed insurance "may be significantly more expensive than insurance [plaintiff] can buy [himself]." (BOA Mot. at 8; Compl., Ex. B, Lender-Placed Insurance Notice ("Insurance Notice") (Docket No. 1-1).) However, the deed of trust could be interpreted as restricting Bank of America's discretion because it states that Bank of America may pay whatever is "necessary." (Deed of Trust ¶ 7.)

"[W]here the language [of a contract] is ambiguous, such that it is capable of two or more reasonable interpretations and therefore leaves doubt as to the parties' intent, a motion to dismiss must be denied." Maloney v. Indymac Mortg. Servs., No. CV-13-04781 DDP, 2014 WL 6453777, at *6 (C.D. Cal. Nov. 17, 2014); see Consul Ltd. V. Solide Enters., 802 F.2d 1143, 1149 (9th Cir. 1986) (holding that the district court erred in dismissing for failure to state a claim where the conflict in language of an agreement "leaves doubt as to the parties' intent"). Though the deed of trust allows Bank of America to institute lender-placed insurance, whether the amount it paid was "necessary" creates ambiguities regarding the authorized level of insurance.

1    The conduct alleged in this case, including the
2  language in the deed of trust itself, is strikingly similar to
3  that in McNeary-Calloway v. JP Morgan Chase Bank, N.A., 863 F.
4  Supp. 2d 928 (N.D. Cal. Mar. 26, 2012).  In McNeary, the
5  plaintiffs' agreements included the same language about the
6  lender's right to "do and pay whatever is necessary to protect
7  the value of the property and Lender's rights in the property,
8  including payment of . . . hazard insurance."  McNeary, 863 F.
9  Supp. 2d at 956.  The court in McNeary, determined that the
10  defendants could only place insurance "to the extent such
11  insurance 'is necessary,'" which did not give defendants
12  "unlimited discretion," and therefore the court denied
13  defendants' motion to dismiss the breach of contract claim.  Id.;
14  see also Longest v. Green Tree Servicing LLC, 74 F. Supp. 3d
15  1289, 1298 (C.D. Cal. Feb. 9, 2015) (finding there to be
16  ambiguity in the mortgage agreement due to the tension between
17  the allowance of lender-placed insurance but the discretionary
18  function of the lender being able to do "whatever is reasonable
19  and appropriate").

20    Plaintiff has sufficiently alleged a breach of contract
21  claim against Bank of America based on the property inspections
22  and lender-placed insurance.  Accordingly, Bank of America's
23  motion to dismiss plaintiff's breach of contract claim will be
24  denied.

25    B.   Implied Covenant of Good Faith and Fair Dealing

26    Under California law, all contracts contain an implied
27  covenant of good faith and fair dealing.  See San Jose Prod.
28  Credit Ass'n v. Old Republic Life Ins. Co., 723 F.2d 700, 703

1  (9th Cir. 1984).  The covenant "requires each contracting party

2  to refrain from doing anything to injure the right of the other

3  to receive the benefits of the agreement."  Id. (quotations and

4  citation omitted).

5          Bank of America argues that plaintiff's implied

6  covenant of good faith and fair dealing claim avers only a

7  contractual violation and is therefore duplicative of plaintiff's

8  claim for breach of the deed of trust.  (BOA Mot. at 9.)

9  "[W]here breach of an actual term is alleged, a separate implied

10  covenant claim, based on the same breach, is superfluous."  Guz

11  v. Bechtel Nat. Inc, 24 Cal. 4th 317, 327 (2000); see also Env't

12  Furniture, Inc. v. Bina, No. CV 09-7978 PSG, 2010 WL 5060381, *3

13  (C.D. Cal. Dec. 6, 2010) (quotations omitted) ("California law

14  requires that a claim for breach of the implied covenant of good

15  faith and fair dealing go beyond the statement of a mere contract

16  breach and not rely on the same alleged acts or simply seek the

17  same damages" as the breach of contract claim).

18          Plaintiff's implied covenant of good faith and fair

19  dealing claim alleges the same conduct alleged in his breach of

20  contract claim.  (Compare compl. ¶¶ 174-79, with id. ¶¶ 188a-h.)

21  Notably, plaintiff alleges that Bank of America breached its duty

22  of good faith and fair dealing "in violation of the applicable

23  [deed of trust] provisions."  (Id. ¶¶ 188c, 188f.)  As alleged,

24  plaintiff's implied covenant of good faith and fair dealing claim

25  is superfluous.  Therefore, that claim will be dismissed.

26      C.   Fair Debt Collection Practices Act and Rosenthal Act

27          The FDCPA and the Rosenthal Act prohibit false,

28  deceptive, or misleading representations or means in connection

1   with the collection of any debt, and using unfair and
2   unconscionable means to collect or attempt to collect any debt.
3   15 U.S.C. § 1692e-f; Cal. Civ. Code § 1788.1(b).
4                   1.   "Debt Collector" Requirement for FDCPA
5                   In order to be liable under both the FDCPA and the
6   Rosenthal Act, Bank of America must qualify as a "debt
7   collector."  The definition of "debt collector" is broader under
8   the Rosenthal Act than it is under the FDCPA, as the latter
9   excludes creditors collecting on their own debts or a debt that
10  was not in default when it was obtained by a creditor.  See 15
11  U.S.C. § 1692a(6)(F); Herrera v. LCS Fin. Servs. Corp., No. C09-
12  02843 TEH, 2009 WL 5062192, at *2 n.1 (N.D. Cal. Dec. 22,
13  2009) ("[t]he federal definition [of debt collectors] excludes
14  creditors collecting on their own debts, 15 U.S.C. § 1692a(6), an
15  exclusion that does not appear in the state statute, Cal. Civ.
16  Code § 1788.2(c)").
17                  Plaintiff stipulated at oral argument to dropping his
18  FDCPA claim as the parties agree that Bank of America is not a
19  "debt collector" under the FDCPA.  Bank of America is the lender
20  on the loan, and therefore, is "collecting on its own debt" and
21  the loan was not in default when Bank of America obtained it.
22  Accordingly, plaintiff's FDCPA claim will be dismissed.
23                  2.   Rosenthal Act Claim
24                  Plaintiff alleges that Bank of America violated the
25  Rosenthal Act by representing to him that he "must make payments
26  for Escrow Account Advances (which contained illegal fees for
27  excessive and improper [lender-placed insurance]), and the fees
28  for property inspections that were not conducted, excessive, and

                                  11

1   not permitted, when . . . [Bank of America] knew that the fees .
2   . . were not legitimate debts."   (See compl. ¶¶ 253-55.)

3          The heightened pleading standard of Federal Rule of
4   Civil Procedure 9(b) applies to claims under the Rosenthal Act
5   when premised on allegations of fraud, and here plaintiff's
6   Rosenthal Act claim is premised on Bank of America allegedly
7   making false, deceptive, and misleading statements.   See Brown v.
8   CitiMortgage, Inc., SACV 16-00048-CJC, 2016 WL 7507762, at *4
9   (C.D. Cal. Feb. 17, 2016) (applying heightened Rule 9(b) pleading
10  standard for Rosenthal Act claim); Day v. Am. Home Mortg.
11  Servicing, Inc., No. 2:09-CV-02676-GEB-KJM, 2010 WL 2231988, at
12  *2 (E.D. Cal. June 2, 2010) (same).

13         The Ninth Circuit has held that "to avoid dismissal for
14  inadequacy under Rule 9(b), [the] complaint would need to 'state
15  the time, place, and specific content of the false
16  representations as well as the identities of the parties to the
17  misrepresentation.'"   Edwards v. Marin Park, Inc., 356 F.3d 1058,
18  1066 (9th Cir. 2004) (quoting Alan Neuman Prods., Inc. v.
19  Albright, 862 F.2d 1388, 1393 (9th Cir. 1988)).   Further, Rule
20  9(b) requires that a plaintiff "must set forth what is false or
21  misleading about a statement, and why it is false."   Rubke v.
22  Capitol Bancorp Ltd., 551 F.3d 1156, 1161 (9th Cir. 2009)
23  (quotations omitted).

24         Here, the complaint states that Bank of America "made
25  demands for payments after delinquency and/or default by sending
26  letters, making telephone calls, and other attempts to collect
27  mortgage payments."   (Compl. ¶ 250.)   Beyond this, the complaint
28  does not include any other factual allegations about the "time,

1   place, and specific content" of the "letters, telephone calls, or

2   other attempts." Edwards, 356 F.3d at 1066; (Id.)  Accordingly,

3   plaintiff's Rosenthal Act claim will be dismissed.

4        D.    Truth in Lending Act

5             TILA is a consumer protection statute that aims to

6   "avoid the uninformed use of credit."  15 U.S.C. § 1601(a).  The

7   statute "requires creditors to provide borrowers with clear and

8   accurate disclosures of terms dealing with things like finance

9   charges, annual percentage rates of interest, and the borrower's

10  rights." Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412 (1998)

11  (citing 15 U.S.C. §§ 1631, 1632, 1635 & 1638).

12             1.   TILA Claim for Lender-Placed Insurance

13             Under TILA, 12 C.F.R. § 226.18(d), a creditor must

14  disclose a "finance charge" which includes a premium for

15  insurance.  Plaintiff cites to cases allowing TILA claims to

16  proceed in which the original mortgage agreement did not

17  contemplate that the borrower was required to have hazard

18  insurance or that Bank of America was authorized to purchase it

19  if the borrower's policy lapsed.  (Pl.'s Opp'n to Bank of America

20  Mot. at 15 (citing Hofstetter v. Chase Home Fin., LLC, 751 F.

21  Supp. 2d 1116, 1125-28 (N.D. Cal. Oct. 29, 2010) (granting leave

22  to amend to add a TILA claim where mandatory flood insurance was

23  not required "at the loan's consummation and insufficient initial

24  disclosures were made to the borrower that such insurance would

25  have to be purchased in the future"); Travis v. Boulevard Bank

26  N.A., 880 F. Supp. 1226, 1229 (N.D. Ill. Mar. 31, 1995) (emphasis

27  added) ("Defendant's purchase of the allegedly unauthorized

28  insurance and the subsequent addition of the resulting premiums

13

1  to plaintiff's existing indebtedness constituted a new credit

2  transaction" requiring new disclosures under TILA). Here, the

3  deed of trust differs from plaintiff's cited cases because it

4  required plaintiff to have hazard insurance and authorized Bank

5  of America to institute lender-placed insurance if plaintiff's

6  policy lapsed.

7        However, the agreement did not authorize Bank of

8  America to receive kickbacks from the lender-placed insurance or

9  charge for inspections that were drive-by or fabricated.  See

10 Cannon v. Wells Fargo Bank, N.A., 917 F. Supp. 2d 1025, 1044-46

11 (N.D. Cal. Jan. 9, 2013) (denying motion to dismiss TILA claim

12 where lender-placed insurance was authorized by the mortgage

13 agreement, but the kickbacks were not).  Plaintiff sufficiently

14 alleges that Bank of America violated TILA, 12 C.F.R. § 226.17,

15 by failing to disclose the amount and nature of the kickback

16 scheme.  (Compl. ¶ 211.)

17            2.  TILA Claim for Property-Inspection Fees

18        Plaintiff's TILA claim also alleges in conclusory terms

19 that Bank of America violated TILA "through the imposition of

20 unauthorized or inflated" property inspections.  (Id. ¶ 215.)

21 Beyond this conclusory allegation, the complaint contains no

22 other factual allegations pertaining to property inspections in

23 accordance with the TILA claim.  See Ashcroft, 556 U.S. at 678

24 ("Threadbare recitals of the elements of a cause of action,

25 supported by mere conclusory statements, do not suffice.")

26 Further, plaintiff provides no argument in opposition about the

27 TILA claim to the extent it is based on property-inspection fees.

28 (See Pl.'s Opp'n to Bank of America at 14-16.)  Accordingly, the

1  court will grant Bank of America's motion to dismiss plaintiff's

2  TILA claim to the extent it is based on property-inspection fees.

3  3.   <u>TILA Statute of Limitations</u>

4  Bank of America argues plaintiff's TILA claim is time-

5  barred to the extent it is premised on conduct before October 29,

6  2020, as TILA has a one-year statute of limitations.  <u>See</u> 15

7  U.S.C. 1640(e).  In his opposition, plaintiff does not argue that

8  equitable tolling is appropriate, though he attempted to plead as

9  such in the complaint.  (<u>See</u> Pl.'s Opp'n to Bank of America at

10  16-17; Compl. ¶¶ 149-154.)  Plaintiff merely argues that he has

11  also alleged conduct that occurred within the statute of

12  limitations, because the lender-placed insurance was renewed on

13  April 19, 2021.  (Pl.'s Opp'n to Bank of America at 16-17.)

14  Plaintiff provides no explanation of how a claim based on conduct

15  occurring prior to October 29, 2020 would be subject to equitable

16  tolling.  Plaintiff also insufficiently alleges how the

17  information upon which he bases his claims was not available to

18  him earlier, since he had been getting charged for the lender-

19  placed insurance as early as 2019.  Presumably, plaintiff was

20  made aware of these charges as part of his monthly statements,

21  and if he was not, he fails to allege facts to support that

22  inference.

23  Therefore, to the extent plaintiff's TILA claim is

24  based on alleged violations from prior to October 29, 2020, it is

25  time-barred and will be dismissed.  For conduct after October 29,

26  2020, plaintiff's TILA claim based on lender-placed insurance is

27  sufficiently alleged and Bank of America's motion will be denied.

28  E.   <u>RICO Claims</u>

15

1          Both defendants move to dismiss plaintiff's RICO claim

2    which is based on the alleged "kickback scheme" for lender-placed

3    insurance between defendants.  To state a claim under RICO, a

4    plaintiff must allege the existence of a RICO enterprise, the

5    existence of a pattern of racketeering activity, a nexus between

6    the defendant and either the pattern of racketeering activity or

7    the RICO enterprise, and a resulting injury to the plaintiff.

8    Occupational-Urgent Care Health Sys., Inc. v. Sutro & Co.,

9    Inc., 711 F. Supp. 1016, 1021 (E.D. Cal. 1989).

10          When the alleged racketeering activity sounds in fraud

11   -- and here plaintiff bases his RICO claim upon mail and wire

12   fraud -- the complaint must "state with particularity the

13   circumstances constituting fraud or mistake" to meet the standard

14   under Federal Rule of Civil Procedure 9(b).  In re Countrywide

15   Fin. Corp. Mortg. Mktg. & Sales Prac. Lit., 601 F. Supp. 2d 1201,

16   1215 (S.D. Cal. 2009) (quoting Fed. R. Civ. P. 9(b)).  To allege

17   a pattern of racketeering activity, a plaintiff must allege two

18   or more predicate acts.  Sun Sav. & Loan Ass'n v. Dierdorff, 825

19   F.2d 187, 193 (9th Cir. 1987).

20          Here, the complaint alleges only one predicate act of

21   mail and wire fraud.  Plaintiff alleges that he received a

22   lender-placed insurance notice on April 19, 2021 from Bank of

23   America, which he alleges was actually from Integon.  (Compl. ¶

24   144.)  Even assuming that the April 19, 2021 letter is a

25   sufficiently alleged predicate act, plaintiff's RICO claim fails

26   because he has not alleged a second predicate act.  Beyond the

27   one letter, plaintiff does not identify any other predicate acts

28   with the required particularity under Rule 9(b).  Merely stating

1  that Integon sent letters with approval from Bank of America,

2  without identifying the time, place or specific content of false

3  representations of more than one letter, is insufficient to

4  survive a motion to dismiss under the heightened pleading

5  standard of Rule 9(b).  (Id. ¶ 232.)

6       Furthermore, plaintiff's RICO claim must be dismissed

7  for the independent reason that it is nothing more than a

8  dressed-up attempt to assert a breach of contract claim, which

9  plaintiff already alleges.  "A plaintiff cannot state a claim

10  under the Civil RICO statute by simply artfully pleading what is

11  essentially a breach of contract claim."  Manos v. MTC Fin.,

12  Inc., No. SACV 16-01142-CJC, 2018 WL 6220051, *7 (C.D. Cal. Apr.

13  2, 2018) (quotations omitted); Vega v. Ocwen Fin. Corp., No 2:14-

14  cv-04408-ODW, 2015 WL 1383241, *12 (C.D. Cal. Mar. 24, 2015)

15  (dismissing RICO claim which alleged that the defendant assessed

16  fees in violation of the borrowers' mortgage agreement because

17  the claim was premised on a breach of contract). The alleged

18  conduct under plaintiff's RICO claim, of improperly charging

19  borrowers for lender-placed insurance, is also the alleged

20  conduct upon which plaintiff's breach of contract claim is

21  premised.  (Compare compl. ¶ 243, with id. ¶ 179.)

22       Plaintiff's opposition to defendants' motion on this

23  issue only argues that his RICO claim is different than his

24  breach of contract claim for the property-inspection fees.

25  (Pl.'s Opp'n to Bank of America at 9.)  However, as pled by

26  plaintiff, his RICO claim is only based on lender-placed

27  insurance.  (See compl. ¶ 240-47.)  Plaintiff makes no effort to

28  distinguish his breach of contract claim for lender-placed

insurance and his RICO claim for lender-placed insurance.

Accordingly, defendants' motions to dismiss plaintiff's RICO claim will be granted.

Because the complaint fails to sufficiently allege a RICO claim under 18 U.S.C. § 1962(c), plaintiff's claim under § 1962(d) for conspiracy to commit a RICO violation also fails. See Turner v. Cook, 362 F.3d 1219, 1231 n. 17 (9th Cir. 2004) (dismissing conspiracy to commit RICO claim because plaintiffs failed to sufficiently allege RICO claim).

F.   Unjust Enrichment

In the alternative to his claims for breach of contract and implied covenant of good faith and fair dealing, plaintiff brings a separate claim for unjust enrichment against Bank of America. "There is not a standalone cause of action for 'unjust enrichment' which is synonymous with restitution." Astiana v. Hain Celestial Grp., Inc., 783 F.3d 753, 762 (9th Cir. 2015). Rather, it "describe[s] the theory underlying a claim that a defendant has been unjustly conferred a benefit through mistake, coercion, or request" and the "return of that benefit is typically sought in a quasi-contract cause of action." Id. Here, both parties agree that there is an existing contract which is at issue, the deed of trust, so there is no claim to be made in quasi-contract.  Accordingly, the court will grant Bank of America's motion to dismiss plaintiff's unjust enrichment "claim."

G.   California Unfair Competition Law

California's Unfair Competition Law ("UCL") "prohibits any unfair competition, which means 'any unlawful, unfair or

18

1  fraudulent business act or practice.'" In re Pomona Valley Med.

2  Grp., Inc., 476 F.3d 665, 674 (9th Cir. 2007) (quoting Cal. Bus.

3  & Prof. Code § 17200, et seq.).  Plaintiff has alleged that Bank

4  of America was receiving kickbacks for placing insurance on

5  borrowers' property, without disclosing any such kickbacks to

6  borrowers, and Bank of America was falsifying property

7  inspections and still charging borrowers for them.  At the

8  pleading stage, plaintiff sufficiently alleges the UCL claim

9  given plaintiff's remaining claims in this action and the conduct

10  by Bank of America described within the complaint.

11       IT IS THEREFORE ORDERED that:

12       (1) Bank of America's motion to dismiss plaintiff's

13  breach of contract claim be, and the same hereby is, DENIED;

14       (2) Bank of America's motion to dismiss plaintiff's

15  claim for breach of the implied covenant of good faith and fair

16  dealing be, and the same hereby is, GRANTED;

17       (3) Bank of America's motion to dismiss plaintiff's

18  claim under the Fair Debt Collection Practices Act be, and the

19  same hereby is, GRANTED;

20       (4) Bank of America's motion to dismiss plaintiff's

21  claim under the Truth in Lending Act be, and the same hereby is,

22  GRANTED in part with respect to the imposition of property-

23  inspection fees and all alleged violations occurring before

24  October 29, 2020, and DENIED in all other respects;

25       (5) Bank of America's motion to dismiss and Integon's

26  motion to dismiss plaintiff's claim under the Racketeer

27  Influenced and Corrupt Organizations Act, 15 U.S.C. § 1962(c) be,

28  and the same hereby are, GRANTED;

1              (6)  Bank of America's motion to dismiss and Integon's

2    motion to dismiss plaintiff's conspiracy claim under the

3    Racketeer Influenced and Corrupt Organizations Act, 15 U.S.C. §

4    1962(d) be, and the same hereby are, GRANTED;

5              (7) Bank of America's motion to dismiss plaintiff's

6    claim under the Rosenthal Fair Debt Collection Practices Act be,

7    and the same hereby is, GRANTED;

8              (8) Bank of America's motion to dismiss plaintiff's

9    unjust enrichment claim be, and the same hereby, is GRANTED; and

10             (9) Bank of America's motion to dismiss plaintiff's

11   claim for violations of the California Unfair Competition Law, be

12   and the same hereby, is DENIED.

13             Plaintiff has twenty days from the date of this Order

14   to file a second amended complaint, if he can do so consistent

15   with this Order.  In deciding whether to file a second amended

16   complaint, counsel is reminded that the purpose of a complaint is

17   not to see how many claims can be constructed out of a single set

18   of facts, but to plead only such claims as may improve

19   plaintiff's prospects of prevailing at trial.

20   Dated:  May 5, 2022

21   WILLIAM B. SHUBB
     UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28